# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

DON E. WILLIAMS,                              )
    4213 7th Street, SE                         )
    Apartment 202                            )
    Washington, D.C. 20032                   )
                                             )
and                                           )
                                             )
ALLEANS MCQUEEN,                              )
    2412 Pomeroy Road, SE                    )
    Apartment T-3                            )
    Washington, D. C.                        )
                                             )
and                                           )
                                             )
FONDA ALLEN,                                  )
                                             )
        Plaintiffs,                     )
                                             )
v.                                            ) CIVIL ACTION NO. _____
                                             )
                                             )
PERNELL LAMONT SAVAGE                         )
    244 Adams Swamp Road                     )
    Corapeake                                ) JURY TRIAL DEMANDED
    North Carolina 37426                     )
                                             )
and                                           )
                                             )
THE DISTRICT OF COLUMBIA                      )
    As a municipality and government         )
      Serve: the Mayor                     )
    The Honorable Adrian M. Fenty            )
    John A. Wilson Building                  )
    1350 Pennsylvania Ave. NW                )
    Washington, D. C. 20004                  )
                                             )
    and, serve also                          )
                                             )
    the Attorney General of the              )
    District of Columbia                     )
    441 4th Street, NW, Ste. 1060 N          )
    Washington, D. C. 20001                  )

1

```
        The Honorable Linda Singer         )
        Acting Attorney General            )
                                           )
and                                        )
                                           )
KIMBERLY FREEMAN                           )
        Fifth Precinct                     )
        Washington, D. C.                  )
        Metropolitan Police Department     )
        1805 Bladensburg Road, NE          )
        Washington, D. C. 20002            )
                                           )
and                                        )
                                           )
JENNIFER GREEN                             )
        Fifth Precinct                     )
        Washington, D. C.                  )
        Metropolitan Police Department     )
        1805 Bladensburg Road, NE          )
        Washington, D. C. 20002            )
                                           )
and                                        )
                                           )
JOHN DOE BERNARD (SGT.)                    )
        Fifth Precinct                     )
        Washington, D. C.                  )
        Metropolitan Police Department     )
        1805 Bladensburg Road, NE          )
        Washington, D. C. 20002            )
                                           )
BERNETTA KINGSBERRY                        )
        1107 H Street, SE                  )
        Washington, D.C.                   )
                                           )
and                                        )
                                           )
PROGRESSIVE CASUALTY                       )
INSURANCE COMPANY                          )
Suite A                                    )
6980 Muirkirk Meadows Drive                )
Beltsville, Maryland  20705

                                           )
Principal office,                          )
6300 Wilson Mills Road                     )
Box W 33, Cleveland OH   44143             )
```

2

| | |
|---|---|
| Doing business in the District of | ) |
| Columbia as Progressive Vehicle | ) |
| Service Company | ) |
| | ) |
| Serve: Registered agent CT Corporation | ) |
| System, 1015 15th Street NW | ) |
| Suite 1000 | ) |
| Washington, D. C. 20005 | ) |
| | ) |
| and | ) |
| | ) |
| ROBERT DYKES | ) |
| Suite A | ) |
| 6980 Muirkirk Meadows Drive | ) |
| Beltsville, Maryland 20705, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

This is a complaint for violation of the federal civil and constitutional rights of the plaintiffs and of their rights under the Americans with Disabilities Act, growing out an underlying cause of action for negligence in the operation of an automobile driven by the defendant Savage which he drove into the plaintiff Williams. The plaintiffs McQueen and Allen were witness to these events but in violation of their civil and constitutional rights were interfered with in their attempts to bear witness in official proceedings and reports of the incident.

I.

JURISDICTION AND VENUE

1. Plaintiffs bring this action to secure their rights under 42 U. S. C. § 1983 for violation of their federal rights, including their rights under the Americans with Disabilities Act and under 42 U.S.C. § 1985, the right of due process under the Fifth Amendment and their right to the free exercise of their religion under the First

3

Amendment and their right to Petition for the Redress of their grievances under the First Amendment. They also claim under 42 U.S.C. § 1985 and 1981 directly. Thus this is a federal cause of action and, therefore, this Court has jurisdiction.

2.      All events giving rise to this cause of action occurred in the District of Columbia or, in one instance, consisted of acts just outside the District of Columbia intended to impact in the District of Columbia. One defendant not a District resident was in the District when he drove his vehicle into that of the plaintiff Don E. Williams at 11th and H Streets, SE. The other defendant not a resident of the District of Columbia took a action from just outside the District of Columbia which action was intended to have its impact in the District of Columbia and did impact in the District of Columbia as intended.

3.      All ensuing events after the collision giving rise to the federal causes of action claimed herein occurred in the District. Therefore, not only jurisdiction but venue is in this Court.

II.

PARTIES

4.   Plaintiff Don E. Williams is a resident of the District of Columbia and was so at all times pertinent hereto. He was struck and injured in the underlying auto collision which is the subject of a pendant claim to this complaint.

5.   Plaintiff Alleans McQueen is a resident of the District of Columbia and was at all times pertinent hereto. She was a witness to the auto collision in question but was interfered with in violation of her federal rights and prevented from being a witness in the ensuing proceedings, beginning with the report of the officer, the defendant Freeman, arriving at the scene.

6. Plaintiff Fonda Allen is a resident of the District of Columbia and was at all times pertinent hereto. She was a witness to the auto collision in question but was interfered with in violation of her federal rights and prevented from being a witness in the ensuing proceedings, beginning with the report of the officer, the defendant Freeman, arriving at the scene.

7. The defendant Pernell Lamont Savage was the driver of the vehicle that ran a red light and struck the vehicle that the plaintiff Williams was driving and then falsely stated, while the plaintiff Williams was injured and on his way to the hospital, that it was the plaintiff Williams who ran a red light and concerted with the other defendants to deprive the plaintiffs of their federal rights as set out herein.

8. The defendant Kimberly Freeman was the police officer who came to the scene of the collision to do a report and there concerted with the defendants Savage and Kingsberry to discriminate against the plaintiffs, engage in what she should have known was a deception and to interfere with the plaintiffs' witnessing within the legal system.

9. The defendant Jennifer Greene was the commander of the precinct out of which the defendant Freeman operated who chose to join in the conspiracy to discriminate against the plaintiffs and deprive them of their rights subsequently to the collision.

10. The defendant John Doe (Sgt.) Bernard was a sergeant at the 5th Precinct under Commander Greene who likewise joined subsequently in the concerted effort to deprive the plaintiffs of their rights in a discriminatory fashion.

11. The defendant Bernetta Kingsberry was a witness to the auto collision who concerted with the defendants Freeman and Savage to misrepresent matters in a discriminatory fashion.

12. The defendant District of Columbia is the municipality of the nation's capital that discriminated against and violated the rights of the plaintiffs and through its police department and the officials of that department willfully violated the rights of the plaintiffs.

13. The defendant Progressive Insurance Company is an insurance company doing business in the District of Columbia and surrounding jurisdictions that was the insurer of the striking driver, the defendant Pernell Lamont Savage, and that decided to join in the discrimination complained of rather than acknowledge the exposure of their insured, Pernell Lamont Savage as having engaged in a fraud and deception concerning the red light which was part of the discrimination against the plaintiffs and the defendant Savage's motivation for participating in that discrimination. Though having no special duty to the plaintiff Williams the defendant Progressive Insurance Company stepped over the line when it knowingly through its agent, decided to participate in the deception and discrimination.

14. The defendant Robert Dykes was the insurance adjuster and agent of the defendant Progressive Insurance Company who, upon being shown the deception that had been practiced by the insured of his company, Progressive, the defendant Savage, knowingly decided to participate in the deception and discrimination

III.

FACTS

15. On or about March 24, 2004, the plaintiff Don E. Williams was driving southbound on 11th Street, SE, through a green light at the intersection of 11th and H streets SE.

16. He was coming from a meeting that had just broken up of Alcoholics Anonymous (AA) that had just broken up at the church at that intersection.

17. He was and is a recovered alcoholic who had recovered from that affliction through his belief in a Higher Being which is the center of the AA as a faith and by his regular attendance at AA meetings and the support of his fellow members over a number of years.

18. He was driving a car belonging to a friend and was on his way to her apartment as he had done for many months at that point after driving to the AA meetings in her car.

19. The plaintiffs Alleans McQueen and Fonda Allen were also then and are now recovered alcoholics under the program of AA, believing also in the Higher Power which is the focus of the AA belief and recovery system.

20. They had attended the same AA meetings at the church at the intersection with the plaintiff Don E. Williams for a long time and were friends with the plaintiff Don W. Williams and knew that he proceeded after every AA meeting to drive south down 11th Street past the intersection at H Street on to the home of his friend whose car he used and where, at the time, he stayed.

21. On this particular day the plaintiffs Alleans McQueen and Fonda Allen were in the car of the plaintiff Fonda Allen which the plaintiff Fonda Allen was driving and they were following along behind the plaintiff Don E. Williams as he drove south on 11th Street towards his friends house as he always did, a course which they knew carried him across H Street and on down 11th Street.

22. As the plaintiffs Alleans McQueen and Fonda Allen watched their friend the plaintiff Don Williams proceed southbound on 11th Street through the green light at the

intersection of 11th and H streets SE and as they were following along behind him in their car they saw a car come westbound on H Street, run through the red light and strike the vehicle that the plaintiff Don Williams was driving with great force knocking it off of its southbound course on 11th Street and driving it westward down H Street by the force of the blow.

23. At that time also there was another witness who saw the entire series of events leading to the collision. This was an Assistant United States Attorney in the District of Columbia, Thomas Taylor, who was on his way to get on a bus at the intersection to go to work. He handed the plaintiff Don E. Williams, who was in a dazed state from the force of the blow to the vehicle he was driving, his card, told the plaintiff Don W. Williams that he had seen the entire series of events, including that the plaintiff Don E. Williams had had the green light in his favor, and then boarded his bus and went on to work.

24. The plaintiff Don E. Williams was dazed by the force of the blow to the vehicle he was driving and, after it was driven of course by the blow and westward down H Street, got out and wandered around in that daze.

25. The plaintiffs Alleans McQueen and Fonda Allen stopped their vehicle and got out and were concerned with their friend and were seeking to comfort him.

26. The ambulance with the EMT personnel arrived and took the plaintiff Don E. Williams, dazed and injured, to the hospital.

27. As the EMT personnel drove the plaintiff Don E. Williams off to the hospital the defendant Kimberly Freeman came on the scene and began to fill out her traffic accident report form as the officer reporting to the scene.

28. The defendant Bernetta Kingsberry urged upon the defendant Kimberly Freeman, as the reporting officer that the plaintiff Don E. Williams was at fault, that it was he who had run a red light and that one cannot trust those AA's.

29. The defendant Kingsberry also discouraged the defendant Freeman from listening to the plaintiffs McQueen and Allen and listing them as witnesses and giving them an opportunity to be witnesses in any proceedings that might ensue because you can't trust those AA's.

30. The defendant Kingsberry was subsequently interviewed on behalf of plaintiff Don E. Williams by an experienced interviewer and, when presented with a large drawing of the intersection, such as is standardly used in auto accident inquiries and in presentation of the scene and events, either would not look at the drawing and talk about the collision out of bias or simply could not see very well.  Her statements were internally inconsistent as to how the events occurred and her vantage point and when told of the observation of the events by Assistant U. S. Attorney Taylor stated that he must have been right.

31. The plaintiffs McQueen and Allen tried to talk to the defendant Freeman and tell her their observations and how the collision had occurred but the defendant Freeman made it plain to them that she did not want to hear from anyone in AA.  The defendant Freeman refused to listen to the plaintiffs McQueen and Allen and refused to list them as witnesses.

32. The defendant Freeman, instead of listening to the plaintiffs McQueen and Allen, chose instead to accept without questioning the version of events told to her by the defendant Savage, whom she perceived as not being an AA.

9

33. The defendant Savage took advantage of the absence of the plaintiff Williams and the refusal of the defendant Freeman to listen to the plaintiffs McQueen and Allen to tell the defendant Freeman the falsehood that it was he and not the plaintiff Williams who had the green light.

34. The defendant Freeman, in order to bolster the false and discriminatory version of events then took the name of other witnesses whose story seemed to support the false and discriminatory version of events.

35. One of these was a man named on the defendant Freeman's report as Jesse Graham, listed on the report at an address in D. C.

36. When interviewed on behalf of the plaintiff Don E. Williams by an experienced interviewer (Army Intelligence, ret.) Mr. Graham made it clear that he was in no position when the collision occurred to see the color of the light and could not say what color it was but that he did not like the plaintiff Don E. Williams.  He described Mr. Williams coming out his vehicle in a daze and gong over toward the church and back as erratic behavior rather than the behavior of one who was injured.  He did not say whether this dislike was because the plaintiff Williams was a member of AA.

37. Another witness listed by the defendant Freeman in lieu of the plaintiffs McQueen and Allen was named Phillip Montgomery, also listed in the District.  At the scene Mr. Montgomery told the plaintiff Don E. Williams, before Mr. Williams was taken off to the hospital, that he had seen the green light in the plaintiff Don E. Williams' favor when the collision occurred sand would so testify.

38. But when contacted later on behalf of the plaintiff Don E. Williams Mr. Montgomery stated that he wanted to be paid before he would testify or make any

statement. He also indicated that he would not cooperate because the plaintiff Don E. Williams had refused to take his advice about choosing an attorney.

39. Thus there was no corroboration of the defendant Freeman's version of events as accepted from the defendant Savage except for the conflicted and biased statements of the defendant Kingsberry who appears to have some sort of vision problem. The clear statements of the Assistant United States Attorney Taylor were unknown to the defendant Freeman and the equally clear testimony of the plaintiffs McQueen and Allen was refused out of bias toward members of AA.

40. The defendant Freeman issued a citation to the plaintiff Williams based on the biased selection of testimony and biased perceptions described. The charge was failure to yield the right of way.

41. When the plaintiff Don E. Williams appeared at the Traffic Adjudication Bureau to contest the matter, he was told that the ticket had been "messed up," and told to return home to be re-summoned to appear. No additional summons was ever issued, the plaintiff Don E. Williams was never recalled to the Traffic Adjudication Bureau and the matter appears to have been dropped.

42. The General Counsel of the defendant District of Columbia's Police Department had indicated to counsel for the plaintiffs that there was no formal procedure for correction of such inaccurate police reports but that if the counsel for the plaintiff Don E. Williams would write to him and show him the inaccuracy of the report, he would see that it was corrected.

43. Counsel for the plaintiff Don E. Williams did so write the counsel for the department and show the inaccuracy of the report based on the statements of Thomas

11

Taylor and the inconclusive, conflicted nature of the testimony claimed to support the version given by the defendant Savage. At that time the plaintiff Don E. Williams had not revealed to his counsel the existence of the witnesses McQueen and Allen.

44. This letter to the general counsel of the police department of the defendant District of Columbia was referred to an assistant general counsel and by him to the 5th Precinct, where it was received by the defendant Commander Jennifer Green and the defendant Sgt. Bernard was assigned to the matter.

45. The defendants Green and Bernard had the witness Thomas Taylor come to the station and interviewed him but did not act upon his statements to correct the matter. Nor did they analyze that fact that the witness Graham could not see the color of the light, the inconsistencies in the statements of the witness the defendant Kingsberry or the questionable behavior of the witness Montgomery.

46. Most importantly they decided to pay no attention to the improper bias openly stated by the witness Kingsberry.

47. Called by counsel for plaintiff Williams, Sgt. Bernard stated that the report of the 5th precinct on the matter had been sent back up to the general counsel's office.

48. In the meantime counsel for the plaintiff Williams had learned that the plaintiffs McQueen and Allen, fellow AA members of the plaintiff Williams, had seen the entire collision and corroborated the version of events of the plaintiff Williams and the witness, Assistant U. S. Attorney Thomas Taylor.

49. Interviews were conducted of the plaintiffs McQueen and Allen on behalf of the plaintiff Don E. Williams and the results of those interviews, setting out the testimony that corroborated that of the plaintiff Don E. Williams and the witness Thomas E. Taylor

12

along with a request to re-open the investigation and interview the witnesses MaQueen and Allen whose testimony had been improperly refused because they were AA's. were sent to the assistant general counsel of the police department of the defendant District of Columbia to whom the matter had been assigned.

50. However, the matter was never reopened and the defendant District of Columbia never interviewed the witnesses and now plaintiffs McQueen and Allen through any of its agents that were involved.

51. The defendant District of Columbia thus ratified and supported the bias and discrimination exhibited by the defendant Freeman in concert with the defendant Kingsberry and interfered with the attempts of the plaintiffs McQueen and Allen to be witnesses and made that official policy of the police department.

52. This caused the plaintiff Don E. Williams to be unable to properly settle with and collect for his injuries and the damages to his friend's vehicle caused by the defendant Savage.

53. The plaintiff Williams, through counsel, notified the District of Columbia Office of Risk Management of these matters in an attempt to settle the matter and not have to bring suit to correct the effect of these actions.

54. The defendant District of Columbia's own Office of Risk Management was unable to get any response of cooperation from the Police Department and was thus unable to assist.

55. In the meantime, by virtue of the false representations set out and the discrimination described, the striking driver, the defendant Savage, collected a settlement

for his injuries and property damage from the insurance carrier for the friend of the plaintiff Williams, who had given him permission to drive her car.

56. The carrier for the plaintiff Williams' friend paid out a settlement in reliance upon the misrepresentations and deceptions of the defendant Savage as boosted and enabled by the discrimination against AA's..

57. Plaintiff Williams, through counsel, contacted the carrier for the owner of the vehicle the plaintiff Williams was driving when struck, with her permission and informed that carrier's team of the deception that had been practiced upon them.

58. Plaintiff Williams also, through counsel, contacted the adjuster of the carrier for the striking driver, the defendant Dykes, who indicated when fully informed of the facts that he really didn't care if his insured had lied, thus stepping over the line from adversarial conduct to knowing participation in a deception on behalf of himself and the defendant Progressive.

59. In a further effort to settle matters without going to court, the plaintiff Williams contacted his Councilman, the Honorable Marion Barry and informed him of the above facts.

60. The Honorable Marion Barry made inquiry of the police as to these matters.

61. The matter was handled for the police department by the defendant Bernard, who communicated with counsel for the plaintiff and claimed that the members of the police in the 5th Precinct had had Assistant U. S. Attorney Thomas Taylor come in and make a statement and that that statement had corroborated the statements of the striking driver the defendant Savage that the defendant Savage had had the green light.

62. This was a false statement and a misrepresentation; the witness Thomas Taylor, as he subsequently confirmed when asked, had made no such statement. He had not said the color of the light that the striking driver had was green, he had in fact said that the color of the vehicle of the striking driver was green. Sgt. Bernard knew this and misrepresented the matter in a conscious choice to further the discrimination against those who were members of AA.

IV.

COUNT ONE: VIOLATION OF 42 U.S.C. § 1983 AND OTHER FEDERAL STATUTES

63. Plaintiff incorporates herein by reference the allegations of 1 through 63 above.

64. Under color and authority of the laws as exhibited in the behavior of the individual defendants, with those employed by the District acting in concert with the individual defendants not employed by the District, the rights of the plaintiffs McQueen and Allen to participate as witnesses in the District's system for reporting traffic accidents were violated based on discrimination because of their disability, namely sufferers from alcoholism who had been in recovery from it for a long time but were in recovery precisely because of their participation over the years in AA, which participation was the reason for the improper discrimination and bias by the individual defendants together with the defendant District of Columbia and the defendant Progressive.

65. The defendant District of Columbia's police department violated section 504 of the Americans with Disability Act and Title II of that Act, 42 U.S.C. §§ 12131-34. This violated 42 U.S.C. § 1983.

66. This also violated the rights of the plaintiff Don E. Williams under the same provisions because he would have been the beneficiary of the improperly obstructed witnessing. This violated 42 U.S.C. § 1983.

67. The individual defendants concerted and conspired to deprive the plaintiffs of equal rights as accorded to white citizens in violation of 42 U.S.C. § 1981, their right to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. This violated 42 U.S.C. § 1983 as well as being an actionable wrong against the plaintiffs in its own right.

68. The individual defendants concerted and conspired to deprive the plaintiffs of equal rights as accorded to white citizens in violation of 42 U.S.C. § 1985, inasmuch if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws

69. One or more of the defendants did or caused to be done these acts in furtherance of the object of a conspiracy whereby these plaintiffs were injured, in the case of the plaintiff Williams, in his property of his claims against the driver who struck him, the defendant Savage and the defendant Savage's insurance carrier as a third party beneficiary thereof, and in the case of all three plaintiffs, of their right to have and exercise all the rights and privileges of a citizen

70. Further the defendants, because of the belief of members of AA in a Higher Being akin to the beliefs of Unitarianism, sought and conspired to interfere with the free exercise of their religious beliefs of members of AA by depriving them of the rights and privileges of other citizens for being members of such a believing group and in the process interfered with the right of the plaintiff Williams to petition for the redress of his grievances through the court system and of the plaintiffs McQueen and Allen to so participate in such petitioning on their friend's behalf.

WHEREFORE, plaintiffs pray, in this Count One, for the recovery of damages occasioned by the injury to them and the deprivation of their rights against any one or more of the conspirators, and for the extra pain and suffering endured by the plaintiff Williams, and the humiliation of the plaintiffs because of their disability and their belief, of compensatory and punitive damages in an amount of Two Million Dollars ($2,000,000.00) plus their costs, expenses and attorneys fees under 42 U.S.C. § 1988.

V.

COUNT TWO: UNDERLYING NEGLIGENCE AND DECEPTON OF DEFENDANT SAVAGE, AS JONED BY HIS INSURANCE CARRIER: PLAINTIFF WILLIAMS ONLY

71. Plaintiff Williams incorporates by reference the allegations of 1 through 70 above.

72. Defendant Savage failed to obey the red light and ran through it striking the vehicle in which the plaintiff was driving and seriously injuring the plaintiff and in doing so failed to properly control his vehicle and violated applicable standards of care for driving.

73. Defendant Savage then lied and engaged in deceiving and defrauding the insurance carrier for the plaintiff Williams' lady friend and her car, costing the plaintiff Williams his right to claim against the defendant Savage and Savage's carrier, which carrier then participating knowingly in the deception.

74. The plaintiff Williams was not only physically injured but because of the deception lost his friendship of many years with his female companion to his great emotional distress, and causing the plaintiff Williams to have to go through great delay and additional expense which otherwise would not have been necessary, such as this federal action law suit.

WHEREFOR, the plaintiff Williams prays for compensatory and punitive damages against the defendant Savage, the defendant Progressive and the defendant Dykes in the amount of Two Hundred Thousand Dollars ($200,000.00) to compensate the plaintiff Williams and deter such behavior in the future.

PLAINTIFFS DEMAND A JURY.

    Respectfully submitted,

_____
Laurence A. Elgin  # 159582
Suite 900, South Bldg.
601 Pennsylvania Avenue NW
20004-3615
(202) 628-1114
fax (202) 628-6798

07-583
E RMU

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS
Don E. Williams, Alleans McQueen, Fonda Allen

## DEFENDANTS
Pernell Lamont Savage, The District of Columbia, Kimberly Freeman, Jennifer Green, John Doe Barnard (Sgt), Bernetta Kingsberry, Progressive Casualty Insurance Co., Robert Dykes

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   11001
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT   88888
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Laurence A. Elgin
Suite 900 South Bldg
601 Pennsylvania Ave., NW
Washington DC 20004-3615

Case: 1:07-cv-00583
Assigned To : Urbina, Ricardo M.
Assign. Date : 3/27/2007
Description: WILLIAMS v. SAVAGE

JURY ACTION

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ● 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ● 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ● 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust
☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ○ C. Administrative Agency Review
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ● E. General Civil (Other)    OR    ○ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☒ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☒ 443 Housing/Accommodations<br>☒ 444 Welfare<br>☒ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ⦿ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
42 U. S. C. § 1983 ; 42 U.S.C. § 1985; 42 U.SC. §§ 12131-34,504 Fifth Amendment; First Amendment 42 U.S.981

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ 2,200,000.00   JURY DEMAND: YES ☒ NO ☐   Check YES only if demanded in complaint

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE March 26, 2007   SIGNATURE OF ATTORNEY OF RECORD _____

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.