## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DON E. WILLIAMS,  et al.     )
                                  )
          Plaintiffs,     )
                                  )
v.                            ) Civil Action No. 07-CV-0583 RMU
                                  )
                                  )
PERNELL LAMONT SAVAGE     )
                                  )
          Defendants.     )

### PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS

Plaintiffs, by and through counsel, respectfully submit their Opposition to Defendants' Motions to Dismiss (Dkt #'s 12 and 14), and state as follows:

### Nature of the Case

In the first respect, this is a Civil Rights case in the mold of *Galloway v. the Superior Court of the District of Columbia*, 816 F.Supp. 12 (D.D.C.1993), where a blind man successfully sued the Superior Court to establish that the visually impaired can serve on juries in the District and may not be excluded because of their being people with a disability.  Like *Galloway*, the three Plaintiffs have been directly discriminated against by the District of Columbia through its police department and employees, by being deliberately excluded from access to police services because of their being people with the disability of being recovering alcoholics.  The police officers and the police department deliberately excluded

Plaintiffs Allen and McQueen from being eye witnesses to the subject traffic accident, and from participating in subsequent investigation and reports, thereby denying Plaintiff Williams the benefits and rights to fair and accurate police services, which in turn adversely affected him both civilly and criminally. The defendant District of Columbia directly excluded and denied Plaintiffs equal access to the legal process, and equal rights under law to police services because they were members of Alcoholics Anonymous.

The second count concerns the actions of Defendant Progressive and its insured in committing the economic tort of fraud in connection with the traffic accident, its investigation and insurance claims.

### Standards for Motions to Dismiss

As addressed by the Court of Appeals in *Sparrow v. United Air Lines, Inc.*, 2000 U.S. App. LEXIS 14648,*;342 U.S. App. D.C. 268; 216 F.3d 1111;83 Fair Empl. Prac. Cas. (BNA) 556 (D.C. Cir 2000), under Federal Rule of Civil Procedure 8(a)(2), a claim need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(e)(1) states that "each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading  [*6]  or motions are required." And Rule 8(f) instructs that "all pleadings shall be so construed as to do substantial justice." In *Conley v. Gibson*, the

Supreme Court interpreted these rules to mean that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). *Ibid Sparrow*. The Court went on to hold that:

> the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests…. Such simplified "notice pleading" is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues. Id. at 47-48 (citations omitted). *Ibid*.

The Supreme Court in *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007), held that: "While, for most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant "set out in detail the facts upon which he bases his claim," Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) (emphasis added), Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief."  A complaint is required to contain sufficient factual allegations to satisfy the requirement of providing "fair notice" of the nature of the claim, as well as also "grounds" on which the claim rests.  The present Complaint contains sufficient factual allegations as to the

circumstances, occurrences, and events in support of the claims presented to satisfy these requirements and standards.[1]

### **Plaintiffs' Complaint Satisfied the Applicable Statute of Limitations**

Both of Defendants' motions to dismiss are mistakenly premised on the complaint having been filed one day late. These contentions are mistaken in fact for several reasons. As to the assertions the Complaint was filed on March 27, 2007, when it was due on March 26, 207, such assertions are contradicted by the record. While the docket mistakenly reports the Complaint as being filed on March 27, 2007, a copy of the Complaint physically filed on March 26, 2007 shows it stamped in by the Clerk's Office that day (Exhibit 1, File stamped copy of Complaint). Likewise, all of the summonses accompanying the Complaint were also issued and stamped by the Clerk on March 26, 2007 (see e.g. Dkt #'s 5, 6, and 7 to the District, and Dkt # 9 to Progressive Insurance). The Complaint was in fact filed on March 26, 2007, and was therefore timely.

---

[1] As the Court noted, discovery and other pretrial procedures are available to more precisely disclose the claims and facts which may be in dispute. Additionally, should the factual allegations in the claims be found insufficient, the remedy is to allow the party an opportunity to amend the pleading to address any missing necessary facts (*Andrx Pharms., Inc. v. Biovail Corp. Int'l,* 347 U.S. App. D.C. 178; 256 F.3d 799; 2001 U.S. App. LEXIS 17072; 2001-2 Trade Cas. (CCH) P73,363 (D.C. Cir. 2001).

Defendant District's position is that the applicable statute of limitations is arguendo three years, and Defendant Progressive's positions is that the applicable statute of limitations is three years.

The D.C. Circuit has held that it is the District's three year statute of limitations which applies to civil rights cases and to economic torts, and not the District's one year statute of limitations: "[t]he District of Columbia courts have made it clear that § 12-301(4)'s one-year limitations period governs only the specific enumerated torts; it does not apply generically to all intentional torts. See *Saunders v. Nemati,* 580 A.2d 660, 663-64 (D.C. 1990). Significantly for our case, § 12-301(4) does not cover intentional *economic* torts such as tortious interference with contract or fraud. See *id.* In *Banks v. Chesapeake & Potomac Tel. Co.,* 802 F.2d 1416, 1427 (D.C. Cir. 1986), we said in dictum that § 12-301(4) should not apply to a claim under 42 U.S.C. § 1981, as that section's guarantees of "equal rights to make and enforce contracts, equal access to judicial process, and equal rights under law" made it quite different from the physical and reputational torts covered by § 12- 301(4), *id.* at 1428. The distinction is applicable here, and it seems compelling." (*Crocker Hobart v. Piedmont Aviation*,  No. 93-7141 (D.C. Cir 1995).

The Court went on to hold that *D.C. Code* § 12-301(8), is the local three-year period that governs all causes of action "for which a limitation is not otherwise specially prescribed,". This SOL does in fact embrace all personal injury claims in the District of Columbia (other than the few intentional physical and reputational torts covered by § 12-301(4), see *Banks,* 802 F.2d at 1426- 27), including the economic torts of fraud and tortious interference, see *Saunders,* 580 A.2d at 663-64. (*Ibid).*

Under District of Columbia law, D.C. Code § 12-301(8) (1995), a tort action accrues "when the plaintiff has knowledge of (or by the exercise of reasonable diligence should have knowledge of (1) the existence of the injury, (2) its cause in fact, and (3) some evidence of wrongdoing." *Knight v. Furlow,* 553 A.2d 1232, 1234 (D.C. 1989); *see also Goldman v. Bequai,* 19 F.3d 666, 671-72 (D.C. Cir. 1994).

Likewise, the Court in *Hall v. Clinton*, 285 F.3d 74, 2002 U.S. App. LEXIS 6216 (D.C. Cir. 2002) held that "No one disputes that "the relevant statute of limitations for a § 1985(1) violation in this jurisdiction is three years." Hall II, 143 F. Supp. 2d at 6. The statute-of-limitations clock starts ticking when the plaintiff has sufficient "notice of the conduct ... which is now asserted as the basis for [her] lawsuit." Fitzgerald v. Seamans, 553 F.2d 220, 228-29 (D.C. Cir. 1977).

Accordingly, the applicable SOL for the civil rights and economic tort violations in this case is three years and it has been satisified.

Furthermore, as the above cases also address, any applicable SOL does not start to run until the Plaintiff's has reasonably discovered the actionable conduct: (1) the existence of the injury, (2) its cause in fact, and (3) some evidence of wrongdoing. Plaintiffs did not discover the initial police misconduct until their counsel was investigating the matter months later. Furthermore, Plaintiffs did not discover the defendant District had adopted its ongoing misconduct as its policy until the Summer of 2006, less than one year preceding the filing of the Complaint.

The District's argument that a one year SOL should apply based on a District statute that has not been invoked in this case appears to be mistaken in its reasoning. The District defendants rely on the 1985 Supreme Court decision of *Wilson v. Garcia*, for the opposite proposition of what it stands for and holds. What the case stands for is that the statute of limitations for cases brought under 42 U.S.C. § 1983 is a single universal statute of limitations, usually keyed to the general tort statute of limitations of a given state. The Court directly rejected the approach which the District defendants claim in their brief. The most recent volume of the United States Code Service describes the holding in casenote 2214:

> 42 USCS § 1983 mandates that in choosing state statute of limitations for actions under 42 USCS § 1983, courts select, in each state, most

appropriate statute of limitations for all § 1983 claims rather than apply different statutes to such claims based on evaluations of varying factual circumstances and legal theories presented in each individual case; simple, broad characterization of all § 1983 claims best fits statute's remedial purpose, and furthers federal interest in uniformity, while avoiding uncertainty and time consuming litigation that, though foreign to central purpose of § 1983, characterizes case-by-case approach.

The Court is requested to keep in mind that the present claim is one for deprivation of federal rights under the color and authority of state law, and not just for the deprivation of specific federal rights on their own.[2] We would ask the Court to take especial note that the suit is against the defendants for the violations of the ADA, as well as for the deprivation of the rights guaranteed by that Act as a specific federal rights protected by 42 U.S.C. § 1983. One would hope that the

---

[2] Thus ¶¶ 64 and 65 of the complaint read:

64. Under color and authority of the laws as exhibited by the behavior of the individual defendants, with those employed by the District acting in concert with the individual defendants not employed by the District, the rights of the plaintiffs McQueen and Allen to participate as witnesses in the District's system for reporting traffic accidents were violated based on discrimination because of their disability, namely, sufferers from alcoholism who had been in recovery for a long time but were in recovery precisely because of their participation over the years in AA, which participation was the reason for the improper discrimination and bias by the individual defendants together with the defendant District of Columbia and the defendant Progressive.

65. The defendant District of Columbia's police department violated section 504 of the Americans with Disability Act and Title II of that Act, 42 U.S.C. §§ 12131-34. **This violated 42 U.S.C. § 1983.** (emphasis adde).

The next paragraph then goes on to allege how this deprived the plaintiff Williams and the plaintiffs McQueen and Allen of further federal rights.

seeming inability of Defendants' brief in support of dismissal to make that

distinction is simply a misunderstanding, or perhaps a limit on understanding

rather than an attempt to mislead.

We say this because, at page 4 of the brief, after correctly citing *Wilson v.*

*Garcia, supra*, as standing for the proposition that: "When Congress has not

established a time limitation for a federal cause of action, the settled practice has

been to adopt a local time limitation as federal law if it is not inconsistent with

federal law or policy to do so."  Citing *Id.*, 471 U.S. at 266-67.  The brief then

notes that the Supreme Court case directs courts to apply the "most appropriate" or

the "most analogous" state statute.  The brief then acknowledges that in the District

it has been held that the most appropriate statute of limitations for Section 1983

claims is three years, citing "*Hobson v. Wilson*, 737 F.2d 1, 32 (D.C.

Cir.1984)(borrowing three-year statue of limitations in D.C. Code § 12-301(8) for

actions for which `a limitation is not otherwise specifically prescribed.')."  But

then the brief makes a completely illogical leap on the following page and asserts

that the one year statute of the local disability act applies rather than the broad

general statute mandated by the Supreme Court in the authority just cited by these

defendants before making such an assertion.

The entire thrust of *Wilson* was that the entire history and intent behind 42 U.S.C.§ 1983 was analogous to a general personal injury statute, including, as here the deprivation of personal liberties.  The High Court relied upon and quoted from an earlier Fourth Circuit case:

> "In essence, 1983 creates a cause of action where there has been injury, under color of state law, to the person or the constitutional or federal statutory rights which emanate from or are guaranteed to the person.  In the broad sense, every cause of action under 1983 which is well-founded results from `personal injuries'" Almond v. Kent, 459 F.2d 200, 204 (1972) *Id.,* 471 U.S. at 278

In the opinion the Supreme Court mandated a "simple, broad characterization of all 1983 claims…" as best fitting the statute's remedial purpose. *Id.*, at 272.  It specifically rejected the approach which the District defendants claim the opinion stands for.

The Court, in *Wilson* specifically noted at the time the wide disparity in the circuits on the point of what the proper statute of limitations for 1983 actions was.[3] Of course, since the Supreme Court laid down its mandate, the D.C. courts have adhered to it.  *Banks v. Chesapeake & Potomac Tel. Co.*, 802 F.2d 1416 (D.C.Circ. 1986) (one-year limitations period of District of Columbia Human Rights Act doesn't apply to 1983 claims); *Hobson v. Brennan*, 625 F.Supp. 459 (D.D.C.1985);

---

[3]  The D.C. circuit has always held to the view that the Supreme Court has now made binding on all federal courts.  See *Shifrin v. Wilson*, 412 F.Supp. 1282 (D.D.C. 1976); *Greenfield v. District of Columbia*, 623 F.Supp. 47 (D.D.C. 1985).

*Williams v. District of Columbia*, 676 F.Supp. 329 (D.D.C. 1987); *Rivers v. Montgomery*, 842 F.Supp. 1 (D.D.C. 1993; *Singletary v. District of Columbia*, 351 F.3d 519 (D.C.Cir.2003); *Osuchukwu v. Galludet University*, 296 F.Supp.2d 1 (D.D.C. 2002).

We note that, because of the illogical misdirection in their argument about *Wilson v. Garcia,* the District of Columbia defendants would have the Court decide the instant motion on inapplicable cases not involving Section 1983 such as the opinion of the Fourth Circuit in *Wolsky v. Medical College of Hampton Roads*, 1 F.3d 322 (4th Cir. 1993). We trust the Court will not let this misdirection lead it into ignoring the controlling law. As we say, we hope it simple arises from a failure to understand the complaint.

Additionally, since the District did not make its discriminatory policy known until the Police Department's Commander communicated it, the conduct in question was not discovered until less than one year preceding the filing of the Complaint.

Similarly, as defendants District and Progressive continued in their violative conduct in excluding Plaintiffs from the police investigation and refusing to correct the police and insurance reports (even when presented with an eye-witness statement from an Assistant United States Attorney), their actions constituted

continuing violations which toll any statute of limitations (*Jung v. Mundy, Holt & Mance, P.C.*, 362 U.S. App. D.C. 62; 372 F.3d 429; 2004 U.S. App. LEXIS 12850 (D.C. Cir. 2004)

Likewise, the fraud by defendant Progressive was not fully discovered until its agent revealed his conduct in perpetuating the fraud of its insured until it was also revealed by counsel's investigation. Accordingly for Progressive, the Complaint was filed in time under either application of the law to the facts as well.

## Plaintiffs State a Claim under the Americans with Disabilities Act

The Plaintiffs alleged sufficient facts in their Complaint to state claims under the Americans with Disabilities Act because they are individuals with qualifying disabilities. Paragraphs 16-20 set forth the facts that the three Plaintiffs are recovering alcoholics (a physical impairment), who have a substantial limitation on the major life activity of their being able to live independently and to care for themselves and that they require their continued participation in Alcoholics Anonymous to continue their recovery and to care for themselves. The facts required to put the Defendant on "fair notice" are set forth in the Complaint, even if they did not meet some technical form of pleading which was not required. The Defendant District's arguments make the confusing, inapplicable and inappropriate arguments that alcoholics are not disabled per se, even though it

acknowledges the Plaintiffs are participating in a recovery program.  However, it is

the long established intent, and distinction, of the Americans with Disabilities Act

to protect recovering alcoholics, such as persons in AA, as opposed to people who

are current substance abusers who are not in recovery.  The distinction between

recovering alcoholics and non-recovering alcoholics is one that is apparently lost

on defendant District, the same prejudice which lead to this lawsuit in the first

place.

Furthermore, under the ADA, a person is disabled if they are actually

disabled, or treated as disabled, as well as when they are perceived to have a

disability.  The matter at hand involves direct discrimination due to the

Defendant's perception and treatment of the Plaintiffs as disabled. They were

excluded from access to public services directly due to their perceived status of

being disabled with alcoholism.  Plaintiffs have alleged sufficient facts to establish

they are disabled in fact and furthermore that they are disabled because they were

treated and perceived as disabled.

Additionally, the Defendant's presentation of the cited cases was not

accurate.  *Reg'l Econ. Cmty. Action Program v. City of Middletown*, 294 F.3d 35,

47 (2d Cir. 2002), actually stands opposite to the Defendant's contentions since it

upheld that Program's ADA discrimination claim for a city's refusal to allow

halfway houses for alcoholics as recovering alcoholics were disabled and

reasonable jurors could find that defendants' reason for denying permit was a

pretext. The cited holdings, as applied to recovering alcoholics as in the present

case, hold the opposite of Defendant's contentions:

> We therefore conclude, as did the United States District Court for the
> District of New Jersey on a similar issue, that [*22] RECAP's clients'
> "addictions substantially limit their ability to live independently and to
> live with their families"; that they are "entitled thereby to the
> protections of [the FHA, ADA, and the Rehabilitation Act]"; and that
> their "inability to live independently constitutes a substantial
> limitation on their ability to 'care for themselves.'" United States v.
> Borough of Audubon, 797 F. Supp. 353, 359 (D.N.J. 1991), aff'd, 968
> F.2d 14 (3d Cir. 1992). Because the inability to live independently
> without suffering a relapse -- a baseline prerequisite for admittance to
> the RECAP facility -- limits the major life activity of "caring for one's
> self," an activity that is "necessarily [an] important part[] of most
> people's lives," Williams, 534 U.S. 184, 122 S. Ct. at 693,  the
> residents of the proposed halfway houses would have met the second
> part of the statutory definition of a disability.

The facts set forth in the Complaint establish under the applicable law that

the Plaintiffs are qualified individuals with a disability affecting a major life

activity.

### Plaintiffs State a Violation of Their Right of Access to the Courts

Contrary to the District Defendants' contentions, the Plaintiffs do state a constitutional

claim of denial of access to the courts precisely because the District defendants engaged in

forbidden misconduct which interfered with plaintiffs' remedy in an underlying claim.

The argument based on *Christopher v. Harbury* is misplaced. *Harbury* acknowledges

-14-

that one of the categories of denial of access to justice is systemic official action which frustrates the preparing and filing of suits.  That is precisely what happened here.  Moreover, the entire decision in *Harbury* turned on the distinguishable fact that there was no identifiable underlying claim.  In the instant case, the underlying claim has already been identified in numerous allegations and set out in its own separate count.

Primarily of course, Count One pertains to access to a part of the legal system which is a preliminary to going into court, a part of the preparation.  There can be no doubt that if the police report had been accurately prepared, without the defects from discrimination and bias, or even had it been corrected as alleged in the complaint as was promised, the underlying case would be a slam dunk compared to the frustrations that has beset Plaintiffs.   Mr. Savage would be subject to summary judgment on liability for running the red light and the only issue would be the amount of Williams' damages.

To draw from *Christopher v. Harbury*, the underlying claim <u>is</u> an element that we describe and that is being independently pursued.  And here the plaintiffs can be awarded a remedy that could not be awarded on Williams' personal injury claim, namely, the remedy not only for the violation of his rights but for those of the two excluded witnesses as well, plus punitive damages.  All of these additional remedies are remedies that could not be awarded on a personal injury claim where there had not been this kind of interference with federal rights.

### **Plaintiffs State a Violation of Their Free Exercise of Religion**

Defendant acknowledges that Plaintiffs allege that, as members of Alcoholics Anonymous, their participation and practice is grounded in believing in a "Higher Being," But then the District Defendants argues that denying Plaintiffs their civil rights to participate in the

investigation and reporting of a traffic accident, precisely because of their participation and
practices of AA, somehow does not constitute discrimination. They were discriminated against
precisely because they were members of AA, which has been recognized as having a religious
status. That constitutes religious discrimination.

### Plaintiffs Alleged Injuries Giving Rise to a Federal Claim

While the District defendants characterizes one aspect of the wrongful charges by the
District being dropped as constituting "no harm, no foul" such reasoning is specious. That Mr.
Williams was not subjected to the full measure of harm that could have been incurred due to the
wrongful charges arising from the District's misconduct, hardly makes it no harm at all. Such
position was directly rejected by the Supreme Court in *Burlington Northern*. Furthermore, the
existing policy guidance from the Justice Department to municipal police departments makes
clear that denying the disabled (including alcoholics) access to police services, such as providing
accurate information for investigation and reports, is definitely a harm to be avoided under the
ADA.

Thus the statement at the top of page 10 in the District's "no injury" argument is not true,
viz: "Regardless of the federal claim asserted, plaintiffs suffered no cognizable injury. Even
assuming that plaintiffs McQueen and Allen were ignored when they allegedly tried to express
their observations of the accident at the scene, no plaintiff experienced any adverse
consequences as a result." This is not true. Whether or not it would be necessary, Plaintiffs
could present an expert witness such as a personal injury lawyer, if it came to that, to testify
about the likelihood of settling without much cost had the police report not been influenced by
the illegal bias and been accurate, as opposed to the costs already incurred of the extra

-16-

investigation and effort not to mention overcoming whatever biased falsehoods the police officer may engage in with the backing of her bias and inaccuracy she received from the Department.

### Plaintiffs State a Claim under 42 U.S.C. § 1985

Contrary to District Defendants' position, discriminating against citizen's because of their disability to deny them access to police services is a violation of underlying federal rights. Defendants concede that in this Circuit the question is open, so we are free to pursue it. See reference to *Bois v. Marsh*, p. 11. They admit that *Griffin* did not decide this question.

### Plaintiffs Have Alleged a Municipal Policy or Custom
### Supporting a Claim Against the District of Columbia

The discrimination which began with a single officer and concerting witness became a policy or practice when the police department refused to correct the erroneous police reports, despite commitments made to the contrary. The policy was effectively adopted when it refused to even see that the two witnesses, Alleans McQueen and Fonda Allen, who were interviewed about what they had seen, thus showing "deliberate indifference" to their rights as recovered alcoholics and believers in the higher being that is the focus of AA practices.

As to the "no policy" argument, pp. 11-12: Point out ¶ 51. What do the words "official policy of the police department" describe. Preceding paragraphs, such as 42 through 50 and including the first part of 31 allege clearly how that official policy came to be exhibited despite the original assurance of the General Counsel of the Department that the erroneous report would be corrected if shown to be inaccurate.

Even if there were an applicable one year statute of limitations, which there is not, by virtue of ¶ 42 and the ensuing paragraphs up to 51 there was a classic "lulling" under D.C. law.

Plaintiff Williams was led to believe that the inaccuracy would be corrected by the police department through its GC. Further, since statute of limitations issues involve fact questions, here, if the Supreme Court is not going to be heeded, we would respectfully request permission to amend to allege the dates when the Department hardened its attitude into a a department wide policy.

**Plaintiffs Do Allege Any Personal Involvement by Defendants Greene and Bernard That Would Give Rise to a Claim Against Them**

As to their Monell argument, p. 12: we specifically describe how her superiors, the sgt., Bernard, the District Commander, Greene, and the police GC and Ass't GC all adopted and ratified the actions of Officer Freeman, thus making it a respondeat superior situation no longer. They made her actions their own. They did more than "fail to detect and prevent…" , p. 12, International Action Center, they did in fact, according to our allegations which must be taken as true, act "knowingly or with deliberate, reckless indifference to the constitutional rights of others." P.. 13, citing Jones v. City of Chicago. Ratification is "personal conduct" and we have described it. Who told Sgt. Bernard to mislead me? Why, it was Cmdr. Greene and that can readily be imputed from our allegations.

They argue that the existence of the two witnesses McQueen and Allen was not "revealed to defendants Greene and Bernard,." and cite ¶ 43. ¶ 49, which they do not cite, sets out that the information about McQueen and Allen went to the Police Department through the GC. ¶ 60 alleges Barry's inquiry to the department about "these matters," including, clearly at that point, by inference in our favor according to the law, the McQueen and Allen information. The next ¶, 61, alleges that Bernard, who was under Greene's command, was designated to handle the response by "the department." Thus they argue for inferences in the opposite direction of what

the law requires and discount the inferences which must be drawn in our favor cas the basic premises for their arguments.

### The Complaint States A Cause of Action Against Progressive for Fraud

The second argument by defendant Progressive in its motion to dismiss is not well-grounded in the facts of the entire complaint. It argument is premised on focusing on only the language of the second count while ignoring the preceding pled facts. While Progressive mentions ¶ 71, it deliberately ignores the fact of the pleadings that ¶71 expressly incorporates all the preceding paragraphs of the Complaint. In particular, ¶¶ 58 and 13, as well as others as well, particularly assert that Progressive, through its then employee, defendant Dykes, knowingly decided to participate in what it was fully informed was a fraud upon the plaintiff Williams and upon the insurance company for his friend whose car he was driving and was a conspiracy to violate the civil rights of the plaintiffs. This is also pointed out in ¶ 13. The details of how this happened and the wrongs that Progressive knowingly joined in with are given in, *inter alia*, ¶¶ 21-23, 30-34, 36-39 and so forth. The cause of action against Progressive is clearly set out if one reads the complaint as a whole.

The same argument applies to defendant Progressive's conclusory statement on page 5 of their support memo that Count 1 of the plaintiffs' complaint against them "asserts no allegations or causes of action against defendant Progressive." ¶ 63 of Count One, like its counterpart ¶ 71 of Count Two, incorporates all prior paragraphs of the complaint and their allegations. ¶ 13 in particular alleges that the defendant Progressive "decided to join in the discrimination complained of rather than acknowledge the exposure of their insured, Pernell Lamont Savage as having engaged in a fraud and deception concerning the red light which was part of the

-19-

discrimination against the plaintiffs and the defendant Savage's motivation for having engaged in that discrimination." ¶ 58 alleges the factual occurrence of the defendant Progressive joining in the discrimination at issue. The prayer of Count One does not exclude defendant Progressive and is against all defendants.

Ample factual allegations are made to support any aspect of the plaintiffs' allegations that might be characterized, even arguably, as "legal conclusions." The allegations of joining in tortious activity moot the issue of lack of privity raised in the motion to dismiss. Defendant Progressive only refers to a lack of privity as a defense while relying on inapplicable case law where participation in tortious activity is not at issue. By the basic definition of tort, it is a duty that is at issue and not a contractual obligation. Insurance companies, of all entities, have an obligation not to participate in insurance fraud. Theirs is a heightened responsibility not to engage in bad faith misconduct in that regard. Nor is the question of negligence relevant where, as here, willful tortious activity is alleged. Progressive did not willfully join in the fraud and discrimination by neglect; it did so by the informed and knowing choice of its agent. Those are the allegations.

Thus, the citation by the defendant Progressive to *Thornton v. Little Sisters of the Poor*, 380 A.2d 593 (D.C. 1977) seems quite inapposite and the argument from that case have no basis in the facts of this case. Defendant Progressive cites the case to support a straw-man assertion that: "There is no privity of contract between Plaintiffs and Defendant Progressive. The alleged negligence of Defendant Progressive's insured does not give rise to a cause of action by Plaintiffs against Defendant Progressive. [footnote to *Thornton*]" Page 5 of brief. As we have seen, Plaintiffs do not allege that defendant Progressive participated in running the red light, which is the only act of negligence charged in the complaint. Rather, the plaintiffs allege that

the defendant Progressive, having been informed and knowing that their insured, Pernell Lamont Savage, had lied about the red light and engaged in a cover-up, made a conscious choice to join in the lie and the cover-up.  The lie and cover-up occurred after the negligence; the negligence is not the issue.

Nor is privity at issue.  It is no more relevant that there is no privity between the plaintiffs and the defendant Progressive than it is that there is no privity between the plaintiffs and Mr. Savage.  The facts of the *Thornton* case make clear its irrelevance.  It is a case about title insurance, one not involving liability insurance of any kind, much less auto liability insurance.  It is a case concerning negligent work by a title searcher or abstractor and its holding was that liability of the title abstractor for his negligence ran to his employer only because the duty he has is not one of a general tort duty to the general public, but rather one that arises by the contract between him and his employer.  It is thus not like the duty to refrain from joining in fraud or violation of civil rights.

The holding in *Thornton* relied upon an earlier case which cited a well-known opinion by Mr. Justice Cardozo when he was on the New York high court, *Ultramares Corp v. Touche,* 255 N.Y. 170, 174 N.E. 441 (1931).  In that case, writing for the court, Justice Cardozo held that the duty of one in the business of supplying information is to exercise reasonable care but does not extend to persons beyond one's employer.  The opinion then quotes from Prosser on this point. It is a special situation which has no relevance to the instant case.


Respectfully submitted,

_____/s/_____
STEVEN M. SPIEGEL, D.C. Bar # 386709
3917 Keller Avenue

Alexandria, VA 22302-1817
Phone 703-998-6780; Fax 703-998-7612
E-mail SSpiegelEsq@verizon.net

Counsel for Plaintiffs                                    September 27, 2007

Exhibit 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DON E. WILLIAMS,                                   )
     4213 7th Street, SE                          )
     Apartment 202                                )
     Washington, D.C. 20032                       )
                      )
and                                                )
                      )
ALLEANS MCQUEEN,                                   )
     2412 Pomeroy Road, SE                        )
     Apartment T-3                                )
     Washington, D. C.                            )
                      )
and                                                )
                      )
FONDA ALLEN,                                       )
                      )
        Plaintiffs,                          )

v.

PERNELL LAMONT SAVAGE                              )
     244 Adams Swamp Road                         )
     Corapeake                                   )
     North Carolina 37426                        )
                      )
and                                                )
                      )
THE DISTRICT OF COLUMBIA                           )
     As a municipality and government            )
       Serve: the Mayor                         )
     The Honorable Adrian M. Fenty               )
     John A. Wilson Building                     )
     1350 Pennsylvania Ave. NW                   )
     Washington, D. C. 20004                     )
                      )
     and, serve also                             )
                      )
     the Attorney General of the                 )
     District of Columbia                        )
     441 4th Street, NW, Ste. 1060 N             )
     Washington, D. C. 20001                     )

Case: 1:07-cv-00583
Assigned To : Urbina, Ricardo M.
Assign. Date : 3/27/2007
Description: WILLIAMS v. SAVAGE

JURY TRIAL DEMANDED

1

73.   Defendant Savage then lied and engaged in deceiving and defrauding the insurance carrier for the plaintiff Williams' lady friend and her car, costing the plaintiff Williams his right to claim against the defendant Savage and Savage's carrier, which carrier then participating knowingly in the deception.

74.   The plaintiff Williams was not only physically injured but because of the deception lost his friendship of many years with his female companion to his great emotional distress, and causing the plaintiff Williams to have to go through great delay and additional expense which otherwise would not have been necessary, such as this federal action law suit.

WHEREFOR, the plaintiff Williams prays for compensatory and punitive damages against the defendant Savage, the defendant Progressive and the defendant Dykes in the amount of Two Hundred Thousand Dollars ($200,000.00) to compensate the plaintiff Williams and deter such behavior in the future.

PLAINTIFFS DEMAND A JURY.

Respectfully submitted,

Laurence A. Elgin  # 159582
Suite 900, South Bldg.
601 Pennsylvania Avenue NW
20004-3615
(202) 628-1114
fax (202) 628-6798

**Exhibit 1**

RECEIVED

MAR 2 6 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT