## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DON E. WILLIAMS,  et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 07-CV-0583 RMU |
| | ) |
| | ) |
| PERNELL LAMONT SAVAGE | ) |
| | ) |
| Defendants. | ) |

### PLAINTIFFS' OPPOSITION TO FOURTH MOTION TO DISMISS

Plaintiffs, by and through counsel, respectfully submit their Opposition to

Defendants' (fourth) Motion to Dismiss (Dkt # 28), and state as follows:

### Defendants' Motion to Dismiss

The present motion to dismiss by Progressive's insured Mr. Savage, and

Progressive's then employed agent, Mr. Dykes, is largely a rehash of the issues already

raised by defendant Progressive insurance in its September 13, 2007 motion (Dkt # 14).[1]

### Nature of the Case

In the first respect, this is a Civil Rights case in the mold of *Galloway v. the*

*Superior Court of the District of Columbia*, 816 F.Supp. 12 (D.D.C.1993), where a blind

man successfully sued the Superior Court to establish that the visually impaired can serve

---

[1]  Defendants' Motion (Dkt # 28) is entitled " Motion to Dismiss or in the Alternative, Motion for More Definite Statement".  The next day Defendants filed another "motion" "in the alternative) for More Definite Statement" (Dkt # 29) but without actually filing a motion, while referencing the previous motion.  Plaintiffs requested clarification, but received no response.

on juries in the District and may not be excluded because of their being people with a disability. Like *Galloway*, the three Plaintiffs have been directly discriminated against by the District of Columbia through its police department and employees, by being deliberately excluded from access to police services because of their being people with the disability of being recovering alcoholics. The police officers and the police department deliberately excluded Plaintiffs Allen and McQueen from being eye witnesses to the subject traffic accident, and from participating in subsequent investigation and reports, thereby denying Plaintiff Williams the benefits and rights to fair and accurate police services, which in turn adversely affected him both civilly and criminally. The defendant District of Columbia directly excluded and denied Plaintiffs equal access to the legal process, and equal rights under law to police services because they were members of Alcoholics Anonymous. The Progressive defendants participated in these acts of discrimination by engaging in acts of fraud in concert with the acts of discrimination.

The second count concerns the actions of Defendant Progressive, its agent and its insured in committing the economic tort of fraud in connection with the traffic accident, its investigation and insurance claims.

### Standards for Motions to Dismiss

As addressed by the Court of Appeals in *Sparrow v. United Air Lines, Inc.*, 2000 U.S. App. LEXIS 14648,*;342 U.S. App. D.C. 268; 216 F.3d 1111;83 Fair Empl. Prac. Cas. (BNA) 556 (D.C. Cir 2000), under Federal Rule of Civil Procedure 8(a)(2), a claim

need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(e)(1) states that "each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading [*6] or motions are required." And Rule 8(f) instructs that "all pleadings shall be so construed as to do substantial justice." In *Conley v. Gibson*, the Supreme Court interpreted these rules to mean that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). *Ibid Sparrow*. The Court went on to hold that:

the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.… Such simplified "notice pleading" is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues. Id. at 47-48 (citations omitted). *Ibid.*

The Supreme Court in *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007), held that: "While, for most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant "set out in detail the facts upon which he bases his claim," Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) (emphasis added), Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief." A complaint is required to contain sufficient factual allegations to satisfy the requirement of providing "fair notice" of the nature of the claim, as well as

also "grounds" on which the claim rests.  The present Complaint contains sufficient

factual allegations as to the circumstances, occurrences, and events in support of the

claims presented to satisfy these requirements and standards.[2]

### Defendants' Jurisdictional Arguments Ignore the Complaint and the Law

Defendants' arguments at 5-8 are premised on ignoring the application of Section

1983.  Defendants then inaccurately argue Section 1983 does not apply because the

Complaint supposedly does not allege the individual Progressive defendants were acting

under color of state law.  However, Defendants omit that the Complaint does allege these

individual defendants acted in concert with the District to violate Section 1983.

When Plaintiffs opposed the earlier motion to dismiss by the defendant

Progressive,[3] we pointed out, at 8, that: "The Court is requested to keep in mind that the

present claim is one for deprivation of federal rights under the color and authority of state

law, and not just for the deprivation of specific federal rights on their own."  We

footnoted this statement to point out the language from the complaint, including the

individual defendants acting in concert, as follows:

---

[2]  As the Court noted, discovery and other pretrial procedures are available to more precisely disclose the claims and facts which may be in dispute.  Additionally, should the factual allegations in the claims be found insufficient, the remedy is to allow the party an opportunity to amend the pleading to address any missing necessary facts (*Andrx Pharms., Inc. v. Biovail Corp. Int'l,* 347 U.S. App. D.C. 178; 256 F.3d 799; 2001 U.S. App. LEXIS 17072; 2001-2 Trade Cas. (CCH) P73,363 (D.C. Cir. 2001).

[3]  The defendant Progressive filed another motion to dismiss nearly simultaneously with the motion addressed in this opposition but the Court struck it *sua* sponte as being untimely.  All of these motions are from the same counsel which has represented Progressive and the defendants Savage and Dykes from the outset.

Thus, ¶¶ 64 and 65 of the complaint read:

64. Under color and authority of the laws as exhibited by the behavior of the individual defendants, with those employed by the District acting in concert with the individual defendants not employed by the District, the rights of the plaintiffs McQueen and Allen to participate as witnesses in the District's system for reporting traffic accidents were violated based on discrimination because of their disability, namely, sufferers from alcoholism who had been in recovery for a long time but were in recovery precisely because of their participation over the years in AA, which participation was the reason for the improper discrimination and bias by the individual defendants together with the defendant District of Columbia and the defendant Progressive.

65. The defendant :District of Columbia's police department violated section 504 of the Americans with Disability Act and Title II of that Act, 42 U.S.C. §§ 12131-34. **This violated 42 U.S.C. § 1983.** (emphases adde[d])

Emphasis was added to make it clear that the complaint recites various violations of federal statutory and constitutional rights and alleges that those violations in turn violate the plaintiffs' rights under 42 U.S.C. § 1983.

Defendant likewise inaccurately contends that Section 1981 does not apply because the Complaint supposedly does not allege racial discrimination. Yet ¶ 67 plainly alleges racial discrimination: "The individual defendants concerted and conspired to deprive the plaintiffs of equal rights as accorded to white citizens in violation of 42 U.S.C. § 1981, ..." The Complaint thus alleges both disability and racial discrimination. The racial aspects of the discrimination practiced in this case essentially amount to perceiving this particular AA group, which meets at an inner city church and is for all practical purposes black, as being different and being treated with no respect, a treatment not given to AA groups from other churches where the groups are not black.

And likewise, Defendants' contention that Section 1985 does not apply is likewise misplaced. As Plaintiffs previously responded, discriminating against citizen's because of their disability to deny them access to police services is a violation of underlying federal rights.

Contrary to Defendants' unsupported contentions, the Complaint provides sufficient detail as to the actions of the individual defendants to put them on notice. The introductory paragraphs identifying the defendants Savage and Dykes made clear their involvement in the cooperative effort to deprive the plaintiffs of their federal rights under the broad sweep of 42 U.S.C. § 1983. In introducing defendant Savage, complaint ¶ 7 provides:

> 7. The defendant Pernell Lamont Savage was the driver of the vehicle that ran a red light and struck the vehicle that the plaintiff Williams was driving and then falsely stated, while the plaintiff Williams was injured and on his way to the hospital, that it was the plaintiff Williams who ran a red light and concerted with the other defendants to deprive the plaintiffs of their federal rights as set out herein.

In introducing defendant Dykes, complaint ¶ 14 provides: :

14. The defendant Robert Dykes was the insurance adjuster and agent of the defendant Progressive Insurance Company who, upon being shown the deception that had been practiced by the insured of his company, Progressive, the defendant Savage, knowingly decided to participate in the deception and discrimination

These paragraphs are introductory in nature. Other paragraphs allege further details. Paragraph ¶ 31 speak of how the plaintiffs McQueen and Allen tried to tell the defendant Officer Freeman, when she came to the scene to do her official report, what

had happened as they plainly observed it, which included the fact that the defendant

Savage had run the red light, but that the defendant Freeman "made it plaint to them that

she did not want to hear from anyone in AA.  The defendant Freeman refused to listen to

the plaintiffs McQueen and Allen and refused to list them as witnesses."  At this point, of

course, the plaintiff Williams was on his way to the hospital in an ambulance and could

not state his own case, as alleged elsewhere in the complaint.  In the following paragraph,

¶ 32, the complaint alleges:

> 32. The defendant Freeman, instead of listening to the plaintiffs McQueen
> and Allen, chose instead to accept without questioning the version of events told
> to her by the defendant Savage, whom she perceived as not being an AA.

Thus, the implication in the complaint is clear.  The defendant Savage saw the bias

of the defendant Freeman and heard it and decided to take advantage of the situation by

joining in it through a falsehood about the color of the light.  This is stated specifically

and made clear in the ensuing paragraph:

> 33. The defendant Savage took advantage of the absence of the plaintiff
> Williams and the refusal of the defendant Freeman to listen to the plaintiffs McQueen
> and Allen to tell the defendant Freeman the falsehood that it was he and not the
> plaintiff Williams who had the green light.

¶¶ 55 and 56 allege further specific details of how the defendant Savage acted in

concert  with the governmental defendants and participated in damaging the plaintiffs

further by wronging the plaintiffs to extend the damage flowing from the deprivation of

their federal rights under color and authority of the laws, customs and practices of the

District of Columbia.  COUNT ONE of the complaint is specifically entitled as a

violation of 42 U.S.C. § 1983 and other federal statutes.  Paragraph 64 makes clear that the private and D.C. governmental defendants cooperated to damage the plaintiffs and ¶ 65 makes clear that the violations by the police department of the ADA are addressed as violations of Section 1983.

The Defendants having inaccurately portrayed the contents of the Complaint, similarly presented case authorities and arguments which are either inapplicable to the case at hand, or as well, are also misleading. [With this in mind we would like to address some of the arguments advanced in this motion in the context of the role of the defendant Savage, one of the movants.   Some of these arguments are inapplicable and even misleading on other grounds, before we get to the issue of allegations of direct violation of the ADA as opposed to alleging that plaintiffs were harmed by violation of 42 U.S.C. § 1983 consisting of violations of the ADA among other violations of other federal statutory or constitutional rights. ]

Defendants begin their argument (at 5) by using Fennel v. AETNA Life Ins. Co., 37 F.Supp. 2d. 40, 44 (D.D.C. 1999) to make the irrelevant arguments that Title I and III of the ADA should not apply to them.  It is difficult to see any value in this opening argument because the Complaint contains no allegation of any violation of Title I or III of the ADA.  (The only apparent connection between the Fennel case and the present case seems to be that this Court is the Court in both cases).

And while Defendants rely on <u>Sindram v. Merriwether</u>, 506 F.Supp. 2d 7, 11-12 (D.D.C. 2007) to address Title II of the ADA, which is mentioned in the complaint, they repeat the same mistake of addressing it in isolation of Section 1983. Defendants' argument is mistakenly premised on the direct application of Title II of the ADA alone, while ignoring that the Plaintiffs' based their complaint upon 42 U.S.C. § 1983 as its principal thrust.

The cases cited in this section are further particularly inapposite. The <u>Sindram</u> case involved a *pro se* litigant who had engaged in a series of questionable law suits relating to his treatment at Walter Reed Hospital, a facility of the United States Army and thus of the United States government, not the government of the District of Columbia or any state or territory. Thus the case has no conceivable relationship to the question before the Court since 42 U.S.C. § 1983 could not possibly be involved. <u>Sindram</u> is not a Section 1983, but ADA only case in which the only defendant was an agent or administrator of Walter Reed Hospital who was sued personally. The court that an individual such as that defendant could not be sued personally, only the federal governmental agency itself. It would thus seem to have no relevance to the present case where the gravamen of the complaint is violation of the broader civil rights laws with the ADA as an exemplar under 42 U.S.C. § 1983.

While the defendants also rely on <u>Atkins v. County of Orange</u>, 251 F. Supp. 2d 1225, 1233 (S.D.N.Y. 2003), which did both have a claim under the ADA and a claim

under 42 U.S.C. § 1983, it is equally irrelevant to the present case. While there was an ADA claim in <u>Atkins</u>, it was not a claim that violations of the ADA gave rise to a claim under 42 U.S.C. § 1983. The 42 U.S.C. § 1983 claim in that case was on other grounds against a different defendant. Thus isolated from each other, the two claims have no relevance to present case.

Furthermore, the bases for dismissal of the claims in *Atkins* were inapposite to the instant case. The first of these reason for the dismissal was that the plaintiffs in that case failed to allege that they were denied the benefits of the program at issue. *Id.* at 1232. Here by contrast the plaintiffs allege, in ¶¶ 28-40 and 42-46 and 49-50 and 53-54 and 60 and 61, that there was complete denial of the normal benefits of the police reporting program, first directly by Officer Freeman and then as knowingly ratified and adopted by higher officials. The second reason in *Atkins* was that the plaintiffs there failed to allege that they were treated in a different or discriminatory way from other prisoners who did not have their disability. *Id.* Here there are such allegations. See ¶¶ 28-29, 31-40, , 46, 48- 62, 63-70.

The alleged violations of 42 U.S.C. § 1983 in *Atkins* were separate and against a different defendant. That defendant, a former county executive, was sued personally in his individual capacity for the deficiencies in the health care in the county jails. The claim against him were dismissed on the grounds that he had no personal involvement

that was alleged in the alleged violations of Section 1983. Helpfully for the present case,

the *Atkins* court set out what such personal involvement is required to consist of:

> To state a claim under § 1983, plaintiffs must allege direct or personal
> involvement in the alleged constitutional [or federal statutory] violation.
> *Higgins v. Coombe*, No. 95 Civ.8696, 1997 WL 328623, at *11 (S.D.N.Y. June
> 16, 1997); *Hallet*, 109 F.Supp.2d at 201: *Woods v. Goord*, No. 01 Civ. 3255
> 2002 WL 731691, at *6 (S.D.N.Y., April 23, 2002). Personal involvement
> means direct participation in the infraction, failure to remedy the alleged wrong
> after learning of it through a report or appeal, creation of a policy or custom
> under which the unconstitutional practices [or practices violative of a federal
> statute] occurred, or gross negligence in managing subordinates. *Williams v.
> Smith*, 781 F.2d 319, 323-24 (2d Cir.1986). *Id.* at 1233

In the case before this Court there are allegations of almost all of these kinds of

direct involvement. Initially, Plaintiffs allege the direct involvement of Officer Freeman

and the defendant Savage in the inception of the civil rights violations. Complaint, pp. 8-

11. The Complaint then alleges how the General Counsel of the Police Department

described and encouraged the plaintiff Williams to participate in an informal report or

appeals and how the plaintiffs pursued that report or appeal. Complaint, pp. 11-12.

Then the Complaint alleges how the plaintiffs McQueen and Allen further sought to

participate in the process of the department. Complaint, pp. 12-13. The complaint at 13

alleges how the defendants, including the precinct command and the General Counsel as

the highest legal decision maker of the Police Department, ratified the wrongful conduct.

The individual Progressive defendants attempt to argue that their personal

involvement does not matter because they were not state actors, or were not alleged to

have been acting under color of state law (even though as demonstrated, that has been

-11-

alleged).  As addressed in the well known Civil Rights statutes treatise, "Federal Civil

Rights Acts," Third Edition, by Rodney A. Smolla, George E. Allen Professor of Law,

University of Richmond School of Law, Volume 2, p. 14-21,§ 14:14 ---**Public and

private actors performing in concert**:"

> It is well established that when a private actor acts in concert or conspiracy with a state official, the combined activity constitutes state action and activity under color of law, rendering the private actor liable under § 1983…

A number of cases are cited in a footnote to support this statement.  The first two

cites are to famous and controlling Supreme Court decisions.  The most famous one is the

case of *Adickes v. S,H. Kress & Co.*, 398 U.S. 144 (1970).  In *Adickes* employees of a

private restaurant concerted with police officers to deny service to civil rights protesters.

This well-known and controlling civil rights case was taken a step further in 1980 in

another controlling Supreme Court precedent, *Dennis v. Sparks*, 449 U.S. 24 (1980).  In

*Sparks* the private parties, consisting of a company, its owners and the sureties on a bond

were held to be liable to charges of concerting with a judge even though the judge was

immune from monetary damages.

Likewise, Defendants' reliance on the *Alexander* case is also misplaced.  The

*Alexander* case is in its entirety about the issue of whether or not a public utility, the

Washington Gas Light Company, because it is regulated, is a state actor for purposes of

42 U.S.C. § 1983.  The court in that case, relying upon specific Supreme Court authority

tailored to that narrow issue, held that WGL was not a state actor for purposes of Section

1983.  The police are and always have been since Reconstruction days, so that case is not relevant here.  The same allegations which show how these defendants concerted and conspired together with each other and the state actor defendants for purposes of 42 U.S.C. § 1983, apply to 42 U.S.C. § 1985(2) and (3) as well.  The use by these defendants of the *Alexander, supra* case is as invalid in relation to the Plaintiffs' § 1985 (2) and (3) claims as it is for their § 1983 claims.  The question of whether or not a utility is a state actor is equally irrelevant.

The same can be said for attempting to use *Fletcher v. Hook*, 446 F.2d 14, 15 (3d Cir. 1971) in their 42 U.S.C. § 1985 argument.  At the page cited by the defendants, the court states: "The alleged cause of action under 42 U.S.C. § 1985 is not supported by the complaint, which does not state that defendant conspired with anyone."  By contrast, Plaintiffs have already identified the parts of the Complaint which allege that these defendants concerted and conspired together either initially or when they joined in later.  Again Defendants' cited case is far afield on the facts.  It was a case against a single defendant.  It is a small wonder that there were no allegations of conspiracy.

Equally puzzling is the attempted use by these defendants in their 42 U.S.C. § 1985 argument, of the case of *Lucas v. Kale*, 365 F.Supp. 1345, 1347 (W.D.Va.1973).  This was essentially a case by a man who was beaten by arresting police officers.  It was brought both under 42 U.S.C. § 1983 and § 1985.  The § 1983 charges were sustained and survived dismissal.  The § 1985 charges were dismissed.  The § 1983 charges were

sustained on the theory that the out of control officers were negligently supervised by

their superiors and were abusing the prisoner's rights, citing precedent to include 4th

Circuit cases and a case from this jurisdiction *Carter v. Carlson*, 144 U.S. App. D.C. 388,

447 F.2d 358 (D.C. Cir.1971).  This, of course, supports not dismissing the present

complaint.  The § 1985 holding in the *Lucas* case to which these defendants point is as

lacking in relevance as their other citations.  For in *Lucas*, the § 1985 claims were

dismissed because the complaint contained no allegations of any discrimination.  The

plaintiff was beaten up but not discriminated against.  Here by contrast, as we have

pointed out, there are allegations of discrimination based on disability, religious belief

and implicitly on race.  So all of the arguments for dismissal of the plaintiffs' civil rights

claims fail.

Plaintiffs have already set out how the allegations of the present complaint make

out a clear case of defendant Savage acting in concert with the police in the present case.

The same applies to defendant Dykes as well.  See ¶ 58.  The defendant Dykes knowingly

decided to join in the concerted discriminatory bias upon which the deceptions of the

defendant Savage were based.

In answering the earlier dismissal motion from defendant Progressive, Plaintiffs

expressed the hope that they had misunderstood or misapprehended what was being

alleged in the way in which they tried to dodge the sweep of the Section 1983 Ku Klux

Klan Act and focused improperly solely upon an incorrect assertion that plaintiffs were

suing directly under the ADA alone.  However, as they have persisted in such

misstatements, it indicates that it was not merely a misunderstanding.  We would then ask

that the attempted diversion  from the actual issues involved be repudiated in an effort to

bring to bear the actual issues in the case.  It is not the 42 U.S.C. § 1983 claims of the

plaintiffs that are "frivolous" as asserted in conclusory fashion on p. 1 of the motion to

dismiss of these defendants.  On p. 3 of their brief these defendants cite *Bell Atlantic*

*Corp. v. Twombly*, 127 S.Ct. 1955, 1966 (2007) for the proposition that "Fed.R.Civ.P. 12

(b)(6) allows the Court to dispose of claims asserting defective legal theories."   The

Court should likewise exercise its authority to repudiate the twisting of and

misrepresentation of legal theories and should do so to get this case on track.

### The Complaint States A Cause of Action for Fraud

Defendants' starting point is to once again ignore all the facts alleged in the

Complaint, and to proceed to argue from that false premise.  Plaintiffs already responded

in their first Opposition as to the specific facts and actions by these Defendants in

engaging in acts of fraud.  This was far more than the present motion's contention of a

simple case of disagreement of how an automobile accident took place.  The facts were

pled with reasonable particularity, even if Defendants wish to pretend to ignore them.

Under the law of the District of Columbia, an authorized guest of car owner, for

purposes of coverage under the policy of the car owner, stands in the shoes of the car

owner and insurance policy holder as a consumer just as much as if he, the guest with

permission, had purchased the insurance. *Athridge v. Aetna Cas. & Sur. Co.*, 351 F.3d 1166, 1176 (D.C. Cir. 2003), citing *Banks v. District of Columbia Dep't of Consumer & Regulatory Affairs*, 634 A.2d 433, 437 (D.C.1993). Plaintiffs have alleged here that the striking driver, defendant Savage, when he joined in the concerted effort to deprive the plaintiff Williams of his civil rights, as previously discussed and as previously covered in the identified relevant paragraphs in the complaint, after lying and misrepresenting what color the light was for him to the reporting officer, defendant Freeman. Mr. Savage then lied to the insurance carrier of the friend whose car the plaintiff Williams was driving, so that in reliance on that lie, the insurance carrier of the plaintiff Williams, on his behalf, paid out a settlement of a false claim by the defendant Savage. Complaint, see ¶¶ 55, 56. The defendant Progressive, which was the insurance carrier for the striking driver then, through the defendant Dykes, went along with this lie and refused to correct it, by clear implication interfering with any ability on the part of the plaintiff Williams to get compensation for his injuries. See ¶ 58 and ¶¶ 73 and 74.

In support of their argument, these defendants cite two cases, both of them for criteria constitutes fraud in the inducement, which is the same in the District of Columbia as it is almost everywhere. The two cases are the very well known case of *Hercules & Co. v. Shama Restaurant*, 613 A.2d 916, 923 (D.C. App. 1992) and a more recent case, *Railan v. Katyal*, 766 A.2d 998, 1009 (D.C.2001). The standard formulation or elements are virtually the same in both cases. In *Hercules & Co.* it is that there must be "(1) a false

-16-

representation (2) made in reference to a material fact, (3) with knowledge of its falsity, (4) with the intent to deceive, and (5) an action that is taken in reliance upon the misrepresentation." The formula in *Railan* is the same except that there is an additional element listed that is pertinent here, namely, provable damages.

Contrary to the conclusory assertions of these defendants, all those elements are specifically alleged in the present complaint. What the defendant Savage falsely stated is first clearly stated in ¶ 7. It is then alleged again as he told it to the officer in ¶¶ 32 and 33. It is then alleged that the defendant Savage repeated the falsehood to what, under D.C. law, was plaintiff Williams' insurance company at ¶¶ 55 and 56. This is the first element, the false representation. The second element is that the false representation be made with reference to a material fact. Clearly which driver ran a red light is a material fact and clearly influences who gets compensation. The third element is that the person making the false statement must know it is false. That is alleged in the paragraphs of the complaint set out in reference to element (1). The fourth element is that the lying party must intend to deceive. That "deception" was the intent of the defendant Savage is set out in the paragraphs referred to. ¶¶ 55 and 56 set out that reliance on the part of what was, under D.C. law, the plaintiff Williams' insurance company. That insurance company was paying out this settlement, which it was falsely induced to pay, on behalf of the plaintiff Williams because it had been deceived into believing that the plaintiff Williams as its insured under the circumstances, was at fault by the knowing and

-17-

intentional falsehood of the defendant Savage. There is the final element of damages.

Mr. Williams has alleged his damages and prayed for them. Moreover he was also

damaged by the falsely induced payout which harmed his friend's relationship with her

carrier and his relationship with her and, most significantly, by his inability to pursue his

legitimate claim against the defendant Savage and defendant Savage's carrier because

they joined in the lie through the defendant Dykes and did so knowingly, as is alleged in ¶

58. Contrary to the argument of these defendants, plaintiff Williams clearly alleges in

that paragraph that the defendant Dykes, as the agent of the defendant Progressive,

stepped over the line and knowingly decided to participate in the lie that its insured had

foisted upon the police, the plaintiff Williams' carrier and then the plaintiff Williams.

Further, that same paragraph 58 alleges that the defendant Dykes was fully

informed of the facts of the deception, including all of the facts about the witness

testimony not supporting the lie that was alleged earlier in the complaint at pp. 10-11.

Plaintiffs note that in the argument presented in the brief of these defendants, they engage

in their consistent conduct of ignoring the facts and the allegations to pretend they don't

exist. Either the light was green for the defendant Savage and red for the plaintiff

Williams or it was green for the plaintiff Williams and red for the defendant Savage.

That is a matter of fundamental fact. Plaintiffs allege in this complaint that the light was

green for the plaintiff Williams and red for the defendant Savage. A further fundamental

fact alleged in the complaint by the plaintiffs is that the defendant Savage lied and said

-18-

that he had the green light. There are no fact allegations in the complaint more fundamental than these. Yet, in a complete distortion of the plain meaning of words, these defendants argue that based on their limited characterization of the factual allegations, the Complaint merely concludes there was fraud. Here is the passage from page 11 of their memorandum:

> Plaintiff Williams fails to state a fraud claim because he does not plead any facts that indicate anything other than a dispute regarding the color of the light at the time of the accident. The complaint merely concludes that the because there were different statements regarding the color of the light at the time of the accident, fraud must have been involved. This type of conclusion is insufficient to state a fraud claim because it rests on a conclusion of fraud rather than a fact that supports a finding of fraud.

This, we respectfully submit, is nonsense. Either the light was green for the plaintiff Williams or it was green for the defendant Savage. For purposes of this motion, all of the factual allegations of the complaint must be taken as true. To say, as these defendants do, that the Complaint merely pleads facts that indicate that there is nothing more than a dispute, a mere difference of opinion, and then misrepresent that those limited conflicting facts are the only basis for the fraud allegation is disingenuous. As set forth above, the Complaint pleads specific facts that both Defendants Savage and Dykes knew that Mr. Savage's representations were false, and that they persisted in them anyway. That is not merely a disagreement, that is fraud.

Additionally, in every civil rights claim the humiliation and embarrassment of being discriminated against are provable damages. The officer and the department openly

discriminating against the plaintiffs McQueen and Allen are provable damages.  They are the equivalent in civil rights law of pain and suffering damages in personal injury recovery.  These two plaintiffs were held up to humiliation and embarrassment before the public at the crash site, and before their own friends and community as they sought to help their friend.  Such damages are provable and routinely awarded as monetary damages in civil rights cases.

Respectfully submitted,

_____/s/_____
STEVEN M. SPIEGEL, D.C. Bar # 386709
3917 Keller Avenue
Alexandria, VA 22302-1817
Phone 703-998-6780; Fax 703-998-7612
E-mail SSpiegelEsq@verizon.net

Counsel for Plaintiffs                                    January 29, 2008