## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DON E. WILLIAMS, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-CV-0583 RMU |
| | ) | |
| | ) | |
| PERNELL LAMONT SAVAGE, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' MOTION TO AMEND COMPLAINT

Pursuant to Fed.R.Civ.P. 15(a) and LCvR 7(i) and 15.1, Plaintiffs, by and through counsel, respectfully move to amend their complaint, and request that the Court accept the attached Amended Complaint for filing this day.

Pursuant to Local Rule 7(m), Plaintiffs certify counsel has conferred with defense counsel on the present motion.  However, both sets Defendants do not consent to this motion.


Respectfully submitted,

_____/s/_____
STEVEN M. SPIEGEL, D.C. Bar # 386709
3917 Keller Avenue
Alexandria, VA 22302-1817
Phone 703-998-6780; Fax 703-998-7612
E-mail SSpiegelEsq@verizon.net

Counsel for the Plaintiffs                                    March 24, 2008

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DON E. WILLIAMS,<br>    4213 7th Street, SE<br>    Apartment 202<br>    Washington, D.C. 20032 | )<br>)<br>)<br>)<br>) |
| and | )<br>) |
| ALLEANS MCQUEEN,<br>    2412 Pomeroy Road, SE<br>    Apartment T-3<br>    Washington, D. C. | )<br>)<br>)<br>)<br>) |
| and | )<br>) |
| FONDA ALLEN,<br>    1954 Naylor Road, SE<br>    Washington, D.C.<br>        Plaintiffs, | )<br>)<br>)<br>)<br>) |
| v. | ) CIVIL ACTION NO. 1:07-cv-00583-RMU<br>)<br>) |
| PERNELL LAMONT SAVAGE<br>    244 Adams Swamp Road<br>    Corapeake<br>    North Carolina 37426 | )<br>)<br>) JURY TRIAL DEMANDED<br>)<br>) |
| and | )<br>) |
| THE DISTRICT OF COLUMBIA<br>    As a municipality and government<br>      Serve: the Mayor<br>    The Honorable Adrian M. Fenty<br>    John A. Wilson Building<br>    1350 Pennsylvania Ave. NW<br>    Washington, D. C. 20004 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
|     and, serve also | )<br>) |
|     the Attorney General of the<br>    District of Columbia<br>    441 4th Street, NW, Ste. 1060 N<br>    Washington, D. C. 20001 | )<br>)<br>)<br>) |

The Honorable Linda Singer                )
Acting Attorney General                   )
                                          )
and                                        )
                                          )
KIMBERLY FREEMAN                          )
     Fifth Precinct                       )
     Washington, D. C.                    )
     Metropolitan Police Department       )
     1805 Bladensburg Road, NE            )
     Washington, D. C. 20002              )
                                          )
and                                        )
                                          )
JENNIFER GREEN                            )
     Fifth Precinct                       )
     Washington, D. C.                    )
     Metropolitan Police Department       )
     1805 Bladensburg Road, NE            )
     Washington, D. C. 20002              )
                                          )
and                                        )
                                          )
GEORGE BERNARD (SGT.)                     )
     Fifth Precinct                       )
     Washington, D. C.                    )
     Metropolitan Police Department       )
     1805 Bladensburg Road, NE            )
     Washington, D. C. 20002              )
                                          )
BERNETTA KINGSBERRY                       )
     1107 H Street, SE                    )
     Washington, D.C.                     )
                                          )
and                                        )
                                          )
PROGRESSIVE CASUALTY                      )
INSURANCE COMPANY                         )
Suite A                                    )
6980 Muirkirk Meadows Drive               )
Beltsville, Maryland  20705

                                          )
Principal office,                          )
6300 Wilson Mills Road                     )
Box W 33, Cleveland OH   44143            )

```
Doing business in the District of        )
Columbia as Progressive Vehicle          )
Service Company                          )
                                         )
Serve: Registered agent CT Corporation   )
System, 1015 15ᵗʰ Street NW              )
Suite 1000                               )
Washington, D. C. 20005                  )
                                         )
and                                      )
                                         )
ROBERT DYKES                             )
Suite A                                  )
6980 Muirkirk Meadows Drive              )
Beltsville, Maryland  20705,             )
                                         )
              Defendants.                )
```

## FIRST AMENDED COMPLAINT

This is a complaint for violation of the federal civil and constitutional rights of the plaintiffs, of their rights under the Americans with Disabilities Act, and as violations of their federal constitutional and statutory rights under 42 U.S.C. §§ 1983 and 1981 and 1985 as amended.  It grows out of an underlying cause of action for negligence in the operation of an automobile driven by the defendant Savage which he drove into the vehicle being driven by the plaintiff Williams.   Plaintiffs McQueen and Allen were witness to these events, but in violation of their civil and constitutional rights, were interfered with in their attempts to bear witness in official proceedings and reporting of the incident.  The underlying cause is brought as a pendant claim.

I.

JURISDICTION AND VENUE

1.       Plaintiffs bring this action to secure their rights under 42 U. S. C. § 1983 for violation of their federal rights, including their rights under the Americans with

Disabilities Act and under 42 U.S.C. § 1985, the right of due process under the Fifth Amendment and their right to the free exercise of their religion under the First Amendment and their right to Petition for the Redress of their grievances under the First Amendment.  They also claim under 42 U.S.C. § 1985 and 1981 directly.  Thus this is a federal cause of action and, therefore, this Court has jurisdiction.

2.      All events giving rise to this cause of action occurred in the District of Columbia or, in one instance, consisted of acts just outside the District of Columbia intended to impact in the District of Columbia.  One defendant not a District resident was in the District when he drove his vehicle into that of the plaintiff Don E. Williams at 11th and H Streets, N.E.  The other defendant not a resident of the District of Columbia took a action from just outside the District of Columbia which action was intended to have its impact in the District of Columbia and did impact in the District of Columbia as intended.

3.      All ensuing events after the collision giving rise to the federal causes of action claimed herein occurred in the District.  Therefore, not only jurisdiction but venue is in this Court.

II.

PARTIES

4.      Plaintiff Don E. Williams is a resident of the District of Columbia and was so at all times pertinent hereto.  He was struck and injured in the underlying auto collision which is the subject of a pendant claim to this complaint.

5.      Plaintiff Alleans McQueen is a resident of the District of Columbia and was at all times pertinent hereto.  She was a witness to the auto collision in question but

was interfered with in violation of her federal rights and prevented from being a witness in the ensuing proceedings, beginning with the report of the officer, the defendant Freeman, arriving at the scene.

6.    Plaintiff Fonda Allen is a resident of the District of Columbia and was at all times pertinent hereto.  She was a witness to the auto collision in question but was interfered with in violation of her federal rights and prevented from being a witness in the ensuing proceedings, beginning with the report of the officer, the defendant Freeman, arriving at the scene.

7.    The defendant Pernell Lamont Savage was the driver of the vehicle that ran a red light and struck the vehicle that the plaintiff Williams was driving and then falsely stated, while the plaintiff Williams was injured and on his way to the hospital, that it was the plaintiff Williams who ran a red light and concerted with the other defendants to deprive the plaintiffs of their federal rights as set out herein.

8.    The defendant Kimberly Freeman was the police officer who came to the scene of the collision to do a report and there concerted with the defendants Savage and Kingsberry to discriminate against the plaintiffs, engage in what she should have known was a deception and to interfere with the plaintiffs' witnessing within the legal system.

9.    The defendant Jennifer Greene was the commander of the precinct out of which the defendant Freeman operated who chose to join in the conspiracy to discriminate against the plaintiffs and deprive them of their rights subsequently to the collision.

10.    The defendant George Bernard was a sergeant at the 5th Precinct under Commander Greene who likewise joined subsequently in the concerted effort to deprive the plaintiffs of their rights in a discriminatory fashion.

11.    The defendant Bernetta Kingsberry was a witness to the auto collision who concerted with the defendants Freeman and Savage to misrepresent matters in a discriminatory fashion.

12.    The defendant District of Columbia is the municipality of the nation's capital that discriminated against and violated the rights of the plaintiffs and through its police department and the officials of that department willfully violated the rights of the plaintiffs.

13.    The defendant Progressive Insurance Company is an insurance company doing business in the District of Columbia and surrounding jurisdictions that was the insurer of the striking driver, the defendant Pernell Lamont Savage, and that decided to join in the discrimination complained of rather than acknowledge the exposure of their insured, Pernell Lamont Savage as having engaged in a fraud and deception concerning the red light which was part of the discrimination against the plaintiffs and the defendant Savage's motivation for participating in that discrimination.  Though having no special duty to the plaintiff Williams the defendant Progressive Insurance Company stepped over the line when it knowingly through its agent, decided to participate in the deception and discrimination.

14.    The defendant Robert Dykes was the insurance adjuster and agent of the defendant Progressive Insurance Company who, upon being shown the deception that had been practiced by the insured of his company, Progressive, the defendant Savage,

knowingly decided to participate in the deception and discrimination

III.

FACTS

15.     On or about March 24, 2004, the plaintiff Don E. Williams was driving southbound on 11th Street, NE, through a green light at the intersection of 11th and H streets NE.

16.     He was coming from a meeting of Alcoholics Anonymous (AA) that had just ended at the church at that intersection.

17.     At all relevant times, Mr. Williams was and is a recovering alcoholic.  His being in recovery depends on his regular attendance at AA meetings, which includes his acceptance and belief in a Higher Being as central to AA as a faith, and through the support of his fellow members over a number of years.  Should his participation in AA be interrupted, it would interfere with his ability to live independently and he would be subject to relapses into alcoholism which would substantially impair his ability to care for himself.  He could not function and would be lost in drink as he once was before joining and attending and believing in AA.

18.     Mr. Williams was driving a car belonging to a friend.  He was on his way to her apartment at that point after having driven to the AA meeting in her car, as he had done for many months.

19.     At all relevant times, plaintiffs Alleans McQueen and Fonda Allen were and are now recovering alcoholics under the AA program.  Their being in recovery depends on their regular attendance at AA meetings, which includes their acceptance and belief in a Higher Being as central to AA as a faith, and through the support of their

fellow members over a number of years. Should their participation in AA be interrupted, it would interfere with their ability to live independently and they would be subject to relapses into alcoholism which would substantially impair their ability to care for themselves. They could not function and would be lost in drink as they once were before joining and attending and believing in AA.

20.     They had attended the same AA meetings with the plaintiff Don E. Williams for a long time at the church near the intersection where the collision occurred, and were friends with the plaintiff Don W. Williams and knew that he proceeded after every AA meeting to drive south down 11th Street past the intersection at H Street on to the home of his friend whose car he used and where, at the time, he stayed.

21.     On this particular day the plaintiffs Alleans McQueen and Fonda Allen were in the car of the plaintiff Fonda Allen which the plaintiff Fonda Allen was driving and they were following along behind the plaintiff Don E. Williams as he drove south on 11th Street towards his friends house as he always did, a course which they knew carried him across H Street and on down 11th Street.

22.     As the plaintiffs Alleans McQueen and Fonda Allen watched their friend the plaintiff Don Williams proceed southbound on 11th Street through the green light at the intersection of 11th and H streets NE and as they were following along behind him in their car they saw a car come westbound on H Street, run through the red light and strike the vehicle that the plaintiff Don Williams was driving with great force knocking it off of its southbound course on 11th Street and driving it westward down H Street by the force of the blow.

23.     At that time also there was another witness who saw the entire series of

events leading to the collision.  This was an Assistant United States Attorney in the

District of Columbia, Thomas Taylor, who was on his way to get on a bus at the

intersection to go to work.   He handed the plaintiff Don E. Williams, who was in a dazed

state from the force of the blow to the vehicle he was driving, his card, told the plaintiff

Don W. Williams that he had seen the entire series of events, including that the plaintiff

Don E. Williams had had the green light in his favor, and then boarded his bus and went

on to work.

      24.     The plaintiff Don E. Williams was dazed by the force of the blow to the

vehicle he was driving and, after it was driven of course by the blow and westward down

H Street, got out and wandered around in that daze.

      25.     The plaintiffs Alleans McQueen and Fonda Allen stopped their vehicle

and got out and were concerned with their friend and were seeking to comfort him.

      26.     The ambulance with the EMT personnel arrived and took the plaintiff Don

E. Williams, dazed and injured, to the hospital.

      27.     As the EMT personnel drove the plaintiff Don E. Williams off to the

hospital the defendant Kimberly Freeman came on the scene and began to fill out her

traffic accident report form as the officer reporting to the scene.

      28.     The defendant Bernetta Kingsberry urged upon the defendant Kimberly

Freeman, as the reporting officer that the plaintiff Don E. Williams was at fault, that it

was he who had run a red light and that one cannot trust those AA's.

      29.     The defendant Kingsberry also discouraged the defendant Freeman from

listening to the plaintiffs McQueen and Allen and listing them as witnesses and giving

them an opportunity to be witnesses in any proceedings that might ensue because you can't trust those AA's.

30.     The defendant Kingsberry was subsequently interviewed on behalf of plaintiff Don E. Williams by an experienced interviewer and, when presented with a large drawing of the intersection, such as is standardly used in auto accident inquiries and in presentation of the scene and events, either would not look at the drawing and talk about the collision out of bias or simply could not see very well. Her statements were internally inconsistent as to how the events occurred and her vantage point and when told of the observation of the events by Assistant U. S. Attorney Taylor stated that he must have been right.

31.     The plaintiffs McQueen and Allen tried to talk to the defendant Freeman and tell her their observations and how the collision had occurred but the defendant Freeman made it plain to them that she did not want to hear from anyone in AA. The defendant Freeman refused to listen to the plaintiffs McQueen and Allen and refused to list them as witnesses.

32.     The defendant Freeman, instead of listening to the plaintiffs McQueen and Allen, chose instead to accept without questioning the version of events told to her by the defendant Savage, whom she perceived as not being an AA.

33.     The defendant Savage took advantage of the absence of the plaintiff Williams and the refusal of the defendant Freeman to listen to the plaintiffs McQueen and Allen to tell the defendant Freeman the falsehood that it was he and not the plaintiff Williams who had the green light.

34.     The defendant Freeman, in order to bolster the false and discriminatory version of events then took the name of other witnesses whose story seemed to support the false and discriminatory version of events.

35.     One of these was a man named on the defendant Freeman's report as Jesse Graham, listed on the report at an address in D. C.

36.     When interviewed on behalf of the plaintiff Don E. Williams by an experienced interviewer (Army Intelligence, ret.) Mr. Graham made it clear that he was in no position when the collision occurred to see the color of the light and could not say what color it was but that he did not like the plaintiff Don E. Williams.. He described Mr. Williams coming out his vehicle in a daze and gong over toward the church and back as erratic behavior rather than the behavior of one who was injured. He did not say whether this dislike was because the plaintiff Williams was a member of AA.

37.     Another witness listed by the defendant Freeman in lieu of the plaintiffs McQueen and Allen was named Phillip Montgomery, also listed in the District. At the scene Mr. Montgomery told the plaintiff Don E. Williams, before Mr. Williams was taken off to the hospital, that he had seen the green light in the plaintiff Don E. Williams' favor when the collision occurred sand would so testify.

38.     But when contacted later on behalf of the plaintiff Don E. Williams Mr. Montgomery stated that he wanted to be paid before he would testify or make any statement. He also indicated that he would not cooperate because the plaintiff Don E. Williams had refused to take his advice about choosing an attorney.

39.     Thus there was no corroboration of the defendant Freeman's version of events as accepted from the defendant Savage except for the conflicted and biased

statements of the defendant Kingsberry who appears to have some sort of vision problem. The clear statements of the Assistant United States Attorney Taylor were unknown to the defendant Freeman and the equally clear testimony of the plaintiffs McQueen and Allen was refused out of bias toward members of AA.

40.     The defendant Freeman issued a citation to the plaintiff Williams based on the biased selection of testimony and biased perceptions described. The charge was failure to yield the right of way.

41.     When the plaintiff Don E. Williams appeared at the Traffic Adjudication Bureau to contest the matter, he was told that the ticket had been "messed up," and told to return home to be re-summoned to appear. No additional summons was ever issued, the plaintiff Don E. Williams was never recalled to the Traffic Adjudication Bureau and the matter appears to have been dropped.

42.     The General Counsel of the defendant District of Columbia's Police Department had indicated to counsel for the plaintiffs that there was no formal procedure for correction of such inaccurate police reports but that if the counsel for the plaintiff Don E. Williams would write to him and show him the inaccuracy of the report, he would see that it was corrected.

43.     Counsel for the plaintiff Don E. Williams did so write the counsel for the department and show the inaccuracy of the report based on the statements of Thomas Taylor and the inconclusive, conflicted nature of the testimony claimed to support the version given by the defendant Savage. At that time the plaintiff Don E. Williams had not revealed to his counsel the existence of the witnesses McQueen and Allen.

44.     This letter to the general counsel of the police department of the defendant District of Columbia was referred to an assistant general counsel and by him to the 5th Precinct, where it was received by the defendant Commander Jennifer Green and the defendant Sgt. Bernard was assigned to the matter.

45.     The defendants Green and Bernard had the witness Thomas Taylor come to the station and interviewed him but did not act upon his statements to correct the matter.  Nor did they analyze that fact that the witness Graham could not see the color of the light, the inconsistencies in the statements of the witness the defendant Kingsberry or the questionable behavior of the witness Montgomery.

46.     Most importantly they decided to pay no attention to the improper bias openly stated by the witness Kingsberry.

47.     Called by counsel for plaintiff Williams, Sgt. Bernard stated that the report of the 5th precinct on the matter had been sent back up to the general counsel's office.

48.     In the meantime counsel for the plaintiff Williams had learned that the plaintiffs McQueen and Allen, fellow AA members of the plaintiff Williams, had seen the entire collision and corroborated the version of events of the plaintiff Williams and the witness, Assistant U. S. Attorney Thomas Taylor.

49.     Interviews were conducted of the plaintiffs McQueen and Allen on behalf of the plaintiff Don E. Williams and the results of those interviews, setting out the testimony that corroborated that of the plaintiff Don E. Williams and the witness Thomas E. Taylor along with a request to re-open the investigation and interview the witnesses McQueen and Allen whose testimony had been improperly refused because they were

AA's. were sent to the assistant general counsel of the police department of the defendant District of Columbia to whom the matter had been assigned.

50.    However, the matter was never reopened and the defendant District of Columbia never interviewed the witnesses and now plaintiffs McQueen and Allen through any of its agents that were involved.

51.    The defendant District of Columbia thus ratified and supported the bias and discrimination exhibited by the defendant Freeman in concert with the defendant Kingsberry and interfered with the attempts of the plaintiffs McQueen and Allen to be witnesses and made that official policy of the police department.

52.    This caused the plaintiff Don E. Williams to be unable to properly settle with and collect for his injuries and the damages to his friend's vehicle caused by the defendant Savage.

53.    The plaintiff Williams, through counsel, notified the District of Columbia Office of Risk Management of these matters in an attempt to settle the matter and not have to bring suit to correct the effect of these actions.

54.    The defendant District of Columbia's own Office of Risk Management was unable to get any response of cooperation from the Police Department and was thus unable to assist.

55.    In the meantime, by virtue of the false representations set out and the discrimination described, the striking driver, the defendant Savage, collected a settlement for his injuries and property damage from the insurance carrier for the friend of the plaintiff Williams, who had given him permission to drive her car.

56.    The carrier for the plaintiff Williams' friend paid out a settlement in

reliance upon the misrepresentations and deceptions of the defendant Savage as boosted and enabled by the discrimination against AA's..

57.     Plaintiff Williams, through counsel, contacted the carrier for the owner of the vehicle the plaintiff Williams was driving when struck, with her permission and informed that carrier's team of the deception that had been practiced upon them.

58.     Plaintiff Williams also, through counsel, contacted the adjuster of the carrier for the striking driver, the defendant Dykes, who indicated when fully informed of the facts that he really didn't care if his insured had lied, thus stepping over the line from adversarial conduct to knowing participation in a deception on behalf of himself and the defendant Progressive.

59.     In a further effort to settle matters without going to court, the plaintiff Williams contacted his Councilman, the Honorable Marion Barry and informed him of the above facts.

60.     The Honorable Marion Barry made inquiry of the police as to these matters.

61.     The matter was handled for the police department by the defendant Bernard, who communicated with counsel for the plaintiff and claimed that the members of the police in the 5th Precinct had had Assistant U. S. Attorney Thomas Taylor come in and make a statement and that that statement had corroborated the statements of the striking driver the defendant Savage that the defendant Savage had had the green light.

62.     This was a false statement and a misrepresentation; the witness Thomas Taylor, as he subsequently confirmed when asked, had made no such statement.  He had not said the color of the light that the striking driver had was green, he had in fact said

that the color of the vehicle of the striking driver was green.   Sgt. Bernard knew this and misrepresented the matter in a conscious choice to further the discrimination against those who were members of AA.

IV.

COUNT ONE: VIOLATION OF 42 U.S.C. § 1983 AND OTHER FEDERAL STATUTES

63.      Plaintiff incorporates herein by reference the allegations of 1 through 62 above.

64.      Under color and authority of the laws as exhibited in the behavior of the individual defendants, with those employed by the District acting in concert with the individual defendants not employed by the District, the rights of the plaintiffs McQueen and Allen to participate as witnesses in the District's system for reporting traffic accidents were violated based on discrimination because of their disability, namely sufferers from alcoholism who had been trying to recover from it for a long time but were reliant upon continuing those efforts through AA, which reliance was the reason for the improper discrimination and bias against them by the individual defendants together with the defendant District of Columbia and the defendant Progressive.

65.      The defendant District of Columbia's police department violated section 504 of the Americans with Disability Act and Title II of that Act, 42 U.S.C. §§ 12131-34.  This violated 42 U.S.C. § 1983.

66.      This also violated the rights of the plaintiff Don E. Williams under the same provisions because he would have been the beneficiary of the improperly obstructed witnessing.  This violated 42 U.S.C. § 1983.

67.    The AA group of which the plaintiffs were members had met for many years at a church a few blocks from the intersection where the collision in question occurred and over the years a bias had built up against them by individuals in the neighborhood such as the defendant Kingsberry, and the defendant police officers because of their participation in the AA group in the neighborhood, which AA group is almost completely black, a bias which the defendant police department and its officers have never exhibited toward AA groups meeting in "uptown" churches, which groups are mostly non-black.

68.    Growing out of this bias, the individual defendants concerted and conspired to deprive the plaintiffs of equal rights as accorded to white citizens in violation of 42 U.S.C. § 1981, their right to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.  In particular the defendants violated the rights of the plaintiffs under color and authority of state law (as applied to the District) and as acts of private citizens in the case of the defendant Kingsberry.  This was because their discrimination was racial in that it was directed only to members of this particular AA group that is very largely black, meeting at a "black" church in a "black" neighborhood, the group, the church and the neighborhood being perceived as "black" as opposed to no such animus against substantially and majority "white" AA groups meeting at churches uptown or on Capitol Hill.  The animus against this particular AA group is because it is "black."  This violated 42 U.S.C. § 1983 as well as being an actionable wrong against the plaintiffs in its own right under §§ 1981 and 1985.

69.     The individual defendants concerted and conspired to deprive the plaintiffs of equal rights as accorded to other citizens who are not alcoholics or to white citizens and did so in violation of 42 U.S.C. § 1985, inasmuch if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws, the same being an invidious class-based discrimination on the basis of disability, religious belief and race.

70.     One or more of the defendants did or caused to be done these acts in furtherance of the object of a conspiracy whereby these plaintiffs were injured, in the case of the plaintiff Williams, in his property of his claims against the driver who struck him, the defendant Savage and the defendant Savage's insurance carrier as a third party beneficiary thereof, and in the case of all three plaintiffs, of their right to have and exercise all the rights and privileges of a citizen

71.     Further the defendants, because of the belief of members of AA in a Higher Being akin to the beliefs of Unitarianism, sought and conspired to interfere with the free exercise of their religious beliefs of members of AA by depriving them of the rights and privileges of other citizens for being members of such a believing group and in the process interfered with the right of the plaintiff Williams to petition for the redress of his grievances through the court system and of the plaintiffs McQueen and Allen to so participate in such petitioning on their friend's behalf.

18

WHEREFORE, plaintiffs pray, in this Count One, for the recovery of damages occasioned by the injury to them and the deprivation of their rights against any one or more of the conspirators, and for the extra pain and suffering endured by the plaintiff Williams, and the humiliation of the plaintiffs because of their disability and their belief, of compensatory and punitive damages in an amount of Two Million Dollars ($2,000,000.00) plus their costs, expenses and attorneys fees under 42 U.S.C. § 1988.

V.

COUNT TWO: UNDERLYING NEGLIGENCE AND DECEPTON OF DEFENDANT SAVAGE, AS JONED BY HIS INSURANCE CARRIER: PLAINTIFF WILLIAMS ONLY

72.    Plaintiff Williams incorporates by reference the allegations of 1 through 71 above.

73.    Defendant Savage failed to obey the red light and ran through it striking the vehicle in which the plaintiff was driving and seriously injuring the plaintiff and in doing so failed to properly control his vehicle and violated applicable standards of care for driving.

74.    Defendant Savage then lied and engaged in deceiving and defrauding the insurance carrier for the plaintiff Williams' lady friend and her car, costing the plaintiff Williams his right to claim against the defendant Savage and Savage's carrier, which carrier then participating knowingly in the deception.

75.    The plaintiff Williams was not only physically injured but because of the deception lost his friendship of many years with his female companion to his great emotional distress, and causing the plaintiff Williams to have to go through great delay and additional expense which otherwise would not have been necessary, such as this

federal action law suit.

WHEREFOR, the plaintiff Williams prays for compensatory and punitive

damages against the defendant Savage, the defendant Progressive and the defendant

Dykes in the amount of Two Hundred Thousand Dollars ($200,000..00) to compensate

the plaintiff Williams and deter such behavior in the future.

PLAINTIFFS DEMAND A JURY.

Respectfully submitted,

_____/s/_____
STEVEN M. SPIEGEL, D.C. Bar # 386709
3917 Keller Avenue
Alexandria, VA 22302-1817
Phone 703-998-6780; Fax 703-998-7612
E-mail SSpiegelEsq@verizon.net

Counsel for Plaintiffs                         March 24, 2008